In re LOSEY.

No. 866.

District Court, E. D. Washington, N. D.
May 26, 1941.

No appearance for petitioner.

R. S. Sullivan, of Spokane, Wash., Naturalization Examiner.

SCHWELLENBACH, District Judge.

Harta Inez Losey was born in Minneapolis, Minnesota, fifty-four years ago. Her husband was born at Dawson, North Dakota. Petitioner and her husband went to Canada to take up a homestead in Alberta. The petitioner lost her citizenship through the naturalization of her husband in Canada in 1913. They returned to the United States in 1917 residing here until 1930 when they went to India as missionaries. Their return to this country occurred in May, 1938. The petitioner's husband is an ordained minister and the petitioner, a licensed missionary in the denomination called Seventh-day Adventists. Petitioner is a fine wholesome-looking woman and she testified that she believed in our form of government and in the Constitution and laws of this country. She has never been charged with the violation of any law except on one occasion in which she was charged with parking an automobile improperly. Objection to her naturalization was taken by the examiner on the ground of her unwillingness to take an oath to bear arms. I was deeply impressed with the petitioner's indication of sincerity and the presentation of her testimony. She specifically denied that she was a pacifist or believed in the principles of pacifism. She stated that she had not nor would not participate in any meetings or discussions or the distribution of literature which concerned what is commonly known as pacifism. She testified that she fully recognized the right of the Congress under the Constitution to declare war. She fully accepts the doctrine that the decision upon the question of war or peace is one to be made by the Congress and that that decision is binding upon the citizens of the country. She declares she would accept that decision and would be willing to participate in any sort of war work except the actual shooting of a weapon. She entitles herself a non-combatant as distinguished from a conscientious objector. She testified: "I feel there is a difference because the conscientious objectors, as I understand it, refuse to salute the flag and refuse to do anything." She testifies that she would be glad to work in an Army Camp or do any other necessary war work except actually bear arms. Since the hearing she has filed four quotations from the book "Seventh-day Adventists in Time of War" by Frances M. Wilcox. She submits them for the purpose of showing that the attitude of the denomination has been a consistent one at least since August 2, 1864. The foregoing quotations may be made a part of the record in this case.

I was much impressed with the attitude of Mrs. Losey. She is, in my opinion, the type of woman who would make a very fine citizen. Were it not for the fact that I feel myself bound by the three decisions of the Supreme Court of the United States upon this question, I would admit her to citizenship. The examiner based his motion that the petition be dismissed on the ground that the petitioner is not eligible for naturalization because she is unwilling to take the oath of allegiance to the United States in the manner and form prescribed by law. He based this upon the cases to which I will now refer.

The first of these is United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 449, 73 L.Ed. 889. In that case the applicant was a woman forty-nine years of age, well educated, a linguist, lecturer and writer. In the course of her examination she stated: "I am an uncompromising pacifist. * * * I have no sense of nationalism, only a cosmic consciousness of belonging to the human family." She also said: "I am always ready to tell any one who wants to hear it that I am an uncompromising pacifist and will not fight. In my writings and in my lectures I take up the question of war and pacifism, if I am asked for that." The Supreme Court denied her petition on the same grounds raised by the examiner in this case. A strong dissenting opinion written by Mr. Justice Holmes had the concurrence of Justices Brandeis and Sanford.

The next case upon this was United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 573, 75 L.Ed. 1302. In that case, the petitioner, Professor Macintosh, had served in the Canadian armed forces during the first World War. His objection to bearing arms was not based upon his membership in any religious denomination. He took the position that he had the right to determine for himself the justness of the cause for which the Congress declared the war. He used this language: "I am not willing to promise beforehand, and without knowing the cause for which my country may go to war, either that I will or that I will not 'take up arms in defense of this country,' however 'necessary' the war may seem to be to the Government of the day." In this instance, the dissenting opinion was written by Chief Justice Hughes and was concurred in by Justices Holmes, Brandeis and Stone.

The third case was United States v. Bland, 283 U.S. 636, 51 S.Ct. 569, 570, 75 L.Ed. 1319. In this case, the petitioner insisted upon the right to have the oath of allegiance specifically amended by inserting therein the words "as far as my conscience as a Christian will allow." In that case the Chief Justice wrote the dissenting opinion in which he was joined by Justices Holmes, Brandeis and Stone.

My personal opinion is that these dissenting opinions clearly stated the law. I agree with Chief Justice Hughes that the inclusion of the meaning about bearing arms in the oath as administered to prospective citizens is not justified either by the law or by the form of the oath itself. The form of the oath is not materially different from the form of oath prescribed for those who may enter upon the performance of their duties as public officials in the United States. It is never required that a public official taking his oath should add to the oath the language required by the naturalization examiner. Clearly in the Bland case the petitioner did not have the right to insist upon the amendment to the oath. No more so does the Government have the right to insist upon the amendment to the oath. I have taken the oath to perform the duties of two very important offices in this country and nobody asked me whether I would bear arms. Furthermore, the whole policy of our Government has been to recognize the right of conscientious objectors to refuse to bear arms. In the opinion of the lower court in the Macintosh case, found in 2 Cir., 42 F.2d 845, there appears a discussion of the various provisions of the various draft acts in which recognition of this right has been made by the Government. To them may now be added the exemption provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq. I can't agree with the majority opinion in the Schwimmer case that this action results in applicants for citizenship being placed upon the same footing as the citizens themselves. These decisions require of the applicants for citizenship a higher degree of patriotism than we require of native-born citizens.

I might distinguish this case from the three cases. There are very material differences in the facts as between this case and the other cases. However, I am convinced that, despite these differences in facts, for me to grant citizenship in this case would run counter to the fundamental philosophy and the purpose and objective of the majority opinion in each of the three cases. Consequently, I must deny the application. I do it, however, with the hope that it may be possible for this petitioner to ultimately present the facts of her particular case to the Supreme Court of the United States in order that that Court might pass upon the question as to whether or not this case is distinguishable on the facts from the three to which I have referred.