## UNITED STATES ex rel. REEL v. BADT, Captain, U. S. Navy.

### No. 11.

Circuit Court of Appeals, Second Circuit.

Dec. 14, 1945.

CHASE, Circuit Judge, dissenting.

———◆———

Frederick U. Reel, of Washington, D.C. (Charles A. Horsky, Amy Ruth Mahin, and Covington, Burling, Rublee, Acheson & Shorb, all of Washington, D. C., and David L. Landy, of Buffalo, N. Y., on the brief), for relator-appellant.

Irving S. Shapiro, Atty., Dept. of Justice, of Washington, D.C. (Theron L. Caudle, Asst. Atty. Gen., Robert S. Erdahl, Atty., Dept. of Justice, of Washington, D.C., and George L. Grobe, U. S. Atty., of Buffalo, N. Y., on the brief), for respondent-appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal is a further step in the proceedings before us in United States ex rel. Reel v. Badt, 2 Cir., 141 F.2d 845, where we reversed the decision of the District Court, D.C.W.D.N.Y., 53 F.Supp. 906, dismissing a writ of habeas corpus on behalf of the relator, Frederick U. Reel, to test the validity of his induction into the naval forces against his claim for exemption on the ground that "by reason of religious training and belief," he was "conscientiously opposed to participation in war in any form." Selective Training and Service Act of 1940, § 5(g), 50 U.S.C.A.Appendix, § 305(g). As stated in the earlier case, when Reel appealed from his 1-A classification by his local board in Washington, D. C., he was given a hearing before a hearing officer of the Department of Justice, who filed an extensive report. This is largely quoted in Judge Hand's opinion, 2 Cir., 141 F.2d 845, 846, 847. The officer stated, "There can be no doubt as to the sincerity of his opposition to war," but went on to recommend rejection of the registrant's appeal on the ground that, "even though he be a sincere philosophic humanitarian," his opposition to war was not based on any religious belief. At that time our different interpretation of the statute in United States v. Kauten, 2 Cir., 133 F.2d 703, 708, and in United States ex rel. Phillips v. Downer, 2 Cir., 135 F.2d 521, 524, had recently been announced. There we had held that a conscientious objection to participation in any war under any circumstance might be based upon the compelling voice of "an inward mentor, call it conscience or God, that is for many persons at the present time the equivalent of what has always been thought a religious impulse." No review of this interpretation of the statute was sought by the Selective Service authorities, although in the second case cited the registrant was discharged from custody.

In the present case, relator's appeal was denied; and, his administrative remedies having been exhausted, he suffered induction in order that this application for a writ of habeas corpus might be instituted in his behalf. This court's reversal of the refusal of the writ below was based on its conclusion that the induction, so far as it rested on the report of the hearing officer, could not stand, since that was opposed to the correct interpretation of the Act, as stated in the earlier cases. But since it was not clear whether the board of appeal and the Director of Selective Service had accepted the findings of the hearing officer, the proceeding was remanded for a further hearing before the District Court to ascertain by a certificate or testimony from the Director, who was the final appellate tribunal, whether he had so adopted the findings. And the District Court was directed to sustain or dismiss the writ as it should find that the Director adopted or rejected the hearing officer's findings or determined that the relator did or did not object to "participation in any war under any circumstances because of the compelling voice of his conscience." 141 F.2d 845, 849.

After remand of the case the Director of Selective Service made an affidavit wherein he stated that on September 17, 1943, he classified Reel in Class 1-A; that no explanatory decision had been written, since the practice of writing such decisions had been given up the previous year; and that, "in this case as in all others considered by me, I considered all of the information in the file including the recommendation of the Department of Justice and the Report of the Hearing Officer and classified Reel in Class 1-A because the informa- in his file convinced me that he was not sincere in his claim that he was conscientiously opposed to war in any form." As appears, the certificate was not expressly responsive to the issue as framed by this court; but there is no doubt of the intent of the Director to place his decision upon the subjective state of mind of the relator, as he viewed it, and the District Court quite naturally again dismissed the writ.

On this further appeal, respondent claims that any attack on the Director's certificate is foreclosed by our first decision in this case and the Director's compliance with the suggestion there made. But this is now a different record, with a different finding as the basic ground for the induction; and review of that record is not to be denied relator. In United States ex rel. Trainin v. Cain, 2 Cir., 144 F.2d 944, certiorari denied 323 U.S. 795, 65 S.Ct. 439, after a review of the authorities we held that due process required an examination of a selective service proceeding to see if there was any evidence to support the result. As we pointed out, this was a more limited review than under the so-called substantial-evidence rule applicable to most administrative agencies. Whether or not

this court could have foreclosed even this restricted review now, we think it clear that there is nothing in the earlier case which shows an attempt to do so or to prevent further review on the new record there contemplated. Hence we must examine that new record to the extent allowed and required under the Trainin case.

Thus approaching the issue, we are constrained to say that we do not find in the record any evidence at all upon which a finding of lack of sincerity could rationally be based. Since the Director himself has pointed to no evidence, we are left in doubt as to the grounds upon which he went; but respondent, on an obvious search through all the record,[1] has suggested two possible grounds or bits of evidence to sustain the final finding. The fact that grounds so equivocal are thus emphasized is a demonstration of the barrenness of the record against the relator. Before considering these grounds, note should be taken of the strong case which led the hearing officer (himself a distinguished and experienced lawyer, now a federal judge) to find that there could be no doubt as to relator's sincerity and to stress his attitude as "a sincere philosophic humanitarian." As the officer's report shows, the Federal Bureau of Investigation made "a most exhaustive inquiry," interviewing 36 witnesses, and "fellow employees, friends and neighborhood witnesses repeatedly stated to the agents that the registrant is intelligent and very sincere." There was evidence of his father's friendship with Victor Berger, Socialist congressman from Wisconsin, and with the elder Senator La Follette, the "home atmosphere of opposition to war," the effect upon him of the works and views of the Rev. Dr. John Haynes Holmes, and relator's speech in March, 1936, while a student at the University of Wisconsin, containing "an ardent presentation of his objections to war." The hearing officer himself heard witnesses and concluded: "This registrant is intelligent, well-educated and a real pacifist since his college days."

The two matters of evidence relied on by respondent are a statement in relator's questionnaire, filed in February, 1941, of grounds for occupational deferment and the oath of office taken by relator as a federal employee in July, 1939. Relator, a high-standing graduate of the University of Wisconsin Law School, was employed as an assistant attorney in the opinion section of the Office of the Solicitor of the Department of Labor. As he stated in a letter attached to his questionnaire, his duties were to prepare for the Solicitor's signature opinions on problems arising under various statutes administered by the Department, such as the Wage-Hour Law, 29 U.S.C.A. § 201 et seq., and the Public Contracts Act, 41 U.S.C.A. § 35 et seq. He said that he was then the only attorney working on certain specialized problems under the Wage-Hour law, and continued: "The National Defense program is closely affected by the 'hours worked' problem. Many plants engaged in production for National Defense are instituting employee training programs, and the question arises whether time spent in such training should be paid for as 'hours worked' under the act. As stated previously, I am the only attorney in my section presently assigned specifically to such problems." He also said: "Another statute bearing closely on the defense program is the Public Contracts act which regulates hours and wages on supply contracts for the federal government. I am at present the only attorney in my section who has had experience in interpreting both this act and the Wage-Hour act."

 There seems to be some disagreement whether relator himself pressed a claim for occupational deferment, his contention being that he stated the facts as a part of his duty to place all matters before the board to enable it to make a proper classification. But this seems to us immaterial. Under selective service practice other claims for deferment are considered before the question of conscientious objection to war is taken up; and as we have previously held, a registrant does not lose his rights by following the course the law has set. Petition of Kohl, 2 Cir., 146 F.2d 347, and cases cited. Respondent does not contest this directly, but instead relies on the reference just quoted to "the National Defense program" as showing a "subjective" intent amounting to willingness on the part of the relator to participate in military

[1] The regulations strictly require that all information considered by a board with respect to a registrant shall be in writing or "reduced to writing." See the regulations cited and discussed in United States ex rel. DeGraw v. Toon, 2 Cir., 151 F.2d 778.

activity.[2] In practical effect, and under the circumstances, this would amount to a requirement of election among claims on the part of a registrant. But on the direct issue as respondent thus frames it, we agree with relator that this is a psychological deduction quite at variance with a deduction fully as rational of a conviction against individual participation in war.

Opposition to war may go so far as to force one to oppose preparation for national defense by all others also. This seems to be the position to which respondent wishes to force all claimants for this exemption. But it is just as rational for a conscientious objector to be concerned primarily about his own conscience and his own activities without feeling the necessity of forcing his views on others to the extent of contesting defense measures for future wars. Here relator's own connection with the defense program was most indirect and remote, as obviously the selective service boards concluded. Writing opinions for a superior as to whether certain employees in concerns engaged in production for defense were within the terms of general federal acts is not such participation in war measures as to make mere mention thereof belie a life of long-continued and sincere objection to war.

As concerns the oath taken in July, 1939, that was the usual oath, 5 U.S.C.A. § 16, to "support and defend the Constitution of the United States against all enemies, foreign and domestic." Here, too, the conclusion of lack of sincerity is a strained one. As Judge Schwellenbach has said, "I have taken the oath to perform the duties of two very important offices in this country and nobody asked me whether I would bear arms." In re Losey, D.C.E.D.Wash., 39 F.Supp. 37, 38. Respondent's contention finds reliance for its support in certain well known naturalization cases where the applicants for naturalization themselves raised the issue of their unwillingness to bear arms and were refused citizenship by a sharply divided court. United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889. Whatever may be the extent to which these cases represent present law,[3] they hardly justify the finding of a direct connection between this usual (and perhaps all too routine) step in federal employment and a subjective state of mind showing actual disbelief in long asserted pacifistic principles. That implies, among other things, that at the time of taking the oath the federal employee must have had in mind the none-too-simple course of reasoning of those cases (which has caused debate ever since) and its application far beyond its immediate circumstances to constitute a promise by all public servants to bear arms in a then wholly nonexistent and nonexpected war. It does not seem strange that the Director has failed to find such connection in other draft cases, and the Civil Service Commission has made a definite ruling to the contrary.[4]

What we have just said has been directed to the nature of the evidence as to the relator's state of mind, since it is that which must be read in determining the justification for the conclusion of insincerity. But we think it proper to point out also that, tested in the light of the practical

[2] Thus bringing relator within the authority of United States ex rel. Brandon v. Downer, 2 Cir., 139 F.2d 761, where, however, the registrant had taken steps for voluntary entry into the Air Force.

[3] Compare the extensive dissent of Woodbury, J., in United States v. Girouard, 1 Cir., 149 F.2d 760, 764–767, and the specific statements of the four dissenting justices in In re Summers, 325 U.S. 561, 65 S.Ct. 1307. Respondent also cites In re Summers; but that decision came long after the events here involved and is on quite a different point, namely, the right of a state under the Fourteenth Amendment to the Federal Constitution to refuse admission to the bar to a conscientious objector. Certiorari was granted in the Girouard case, 66 S.Ct. 268.

[4] The Vickrey case, infra, note 5, was cited by the hearing officer; other cases are cited by name by the relator, who also cites specific cases of exempted federal employees engaged in "civilian" war effort. (As to all these, respondent's position appears to be that they were more sincere than relator—a differentiation which seems to involve circular reasoning.) The ruling of the Civil Service Commission, as cited by both parties, concerns reinstatement of former government employees, including conscientious objectors, assigned to "work of national importance under civilian direction" in lieu of induction, and holds that a claim to conscientious objection recognized by the government under the Act does not indicate such a "mental reservation or purpose of evasion" as to make the oath, 5 U.S.C.A. § 16, invalid.

activities of human beings, the conclusion seems not merely strained, but almost inconceivably harsh. Respondent disclaims any intent to hold that federal service automatically forecloses the employee from exemption as a conscientious objector. But if the oath contains a promise to bear arms, that surely must be the consequence. And it is more far-reaching than federal service alone; it will necessarily include all those who take a like oath, including all those in state and municipal service, however limited or temporary, and many public school teachers. And the wide content given to the concept of defense activities will require denial of exemption to all who do not actively oppose any participation by any one in governmental activities actually remote from war. True, the Director is applying his conclusion as a subjective one to an individual case; but that in itself suggests problems as pointing to that lack of equal and fair justice to each registrant required by the regulations, as well as by law. 32 CFR, Cum.Supp. § 623.1. Here the Director did not himself see the relator, as did the hearing officer; the deductions made as to insincerity were entirely from the written record.[5]

This case presents two of the most troublesome questions raised by judicial review on habeas corpus of draft exemptions for conscientious objectors. One is the interpretation of the Act as to this exemption, and the other is as to our powers of review. As we pointed out in United States ex rel. Phillips v. Downer, supra, our interpretation of the Act seemed to us necessary in view of the well known modification in the statutory treatment of conscientious objectors in the present Act as compared to that in the Selective Draft Act of 1917, 50 U.S.C.A.Appendix, § 201 et seq., a modification made in response to strong public demand. And our government is hardly entitled to the acclaim of religious and moral leaders given for this moderating trend if, in actual fact, the present Act

is applied fully as strictly as was the former one. But our conclusion has not been accepted everywhere;[6] and in all probability some of the differences in view in the courts and with the military as to individual cases are traceable to different conceptions of the extent of the Act. Hence a definitive interpretation of the Act by the Supreme Court is certainly to be desired. Again, the extent of judicial review has been a source of conflicting views, as we pointed out in the Trainin case, supra; and on this issue also, clarification of the judicial responsibility is most desirable. Until and unless such final adjudication is made, however, we must act upon the responsibility which we have heretofore defined for ourselves. Acting within the limits as thus defined, our duty seems clear.

The judgment should therefore be reversed for grant of the writ discharging the relator from the custody of the respondent. He will, of course, remain subject to the jurisdiction of the local board during the life of the Act, as pointed out in United States ex rel. DeGraw v. Toon, 2 Cir., 151 F.2d 778.

Reversed and remanded.

CHASE, Circuit Judge (dissenting).

There was ample and, indeed, undisputable evidence to support the classification of the appellant in Class 1-A unless the effect of that evidence was overcome by proof that he was in fact a conscientious objector; and on that question he had the burden of persuasion. Selective Training and Service Act § 5(g), 50 U.S.C.A.Appendix, § 305(g). What has been treated in the opinion of the majority as a finding of fact which is held erroneous as a matter of law because not supported by any substantial evidence is nothing but a statement of the Director of Selective Service explaining why he decided adversely to the appellant on his administrative appeal. It merely shows that in his considered judg-

---

[5] In the Vickrey case, June 5, 1942, where the Director wrote an opinion, which is set forth in full in respondent's brief, the only apparent difference is that Vickrey was "a member of the Presbyterian Church of Montclair, New Jersey," a church not known as one forbidding participation in all wars. Compare also other cases cited by relator and referred to in note 4, supra.

[6] Cf. Waite, Section 5(g) of the Selective Service Act, as Amended by the Court,

1944, 29 Minn.L.Rev. 22; 1944, 38 Ill. L.Rev. 332. But see the letter to the President of "sixty-two leading clergymen, educators and other professional men"—including many distinguished lawyers—quoted in the New York Times for Dec. 10, 1945, p. 23, that "the number of men now in prison is seven times the number in World War I, and reflects the inadequacies of our provisions for conscientious objectors."

ment the appellant failed to prove that he was conscientiously opposed to war in any form.

In so far as it is a finding of fact it is not of a fact needed to support the classification of 1-A which was given the appellant but only a negative finding relating to the inadequacy of the evidence the appellant relied on to prove his right to the different classification he claimed. Without a finding that he is in fact a conscientious objector the appellant cannot escape classification in Class 1-A. The Director has made no such finding, but we are now in effect holding that he was bound as a matter of law to do so regardless of his own judgment as to what was proved and are giving the appellant the benefit of a finding which has no legal or factual existence.

When this cause was remanded on the previous appeal, this court was acting out of an abundance of caution to make sure that the appellant had had the benefit of a correct application of the law to the facts found on his administrative appeal. It was recognized then, and it should be now, that the decision of the Director on the facts was final. See Medo Photo Supply Corp. v. N. L. R. B., 321 U.S. 678, 681 note 1, 64 S.Ct. 830, 88 L.Ed. 1007; Bowles v. United States, 319 U.S. 33, 63 S.Ct. 912, 87 L.Ed. 1194, rehearing denied 319 U.S. 785, 63 S.Ct. 1323, 87 L.Ed. 1125; United States ex rel. Brandon v. Downer, 2 Cir., 139 F.2d 761.

It was correctly said by this court on the previous appeal at pages 848, 849 of United States ex rel. Reel v. Badt, 141 F.2d 845, that:

"The relator can only secure exemption if it is found that the Director of Selective Service has held that he objected to 'participation in any war under any circumstances because of the compelling voice of his conscience.' It is not established that this was the holding, though we think it is equally not established just what the holding was. Under the circumstances, we shall not order the relator discharged from custody, but require him to be remanded for a further hearing before the District Court, in order that the latter may ascertain whether or not the Director of Selective Service (as the final appellate tribunal in this case) adopted the findings of fact of the hearing officer. This may be ascertained either by obtaining the testimony of the Director or by a certificate by him as to his action

which he may furnish to the District Court. If, as a result, it shall be found that the Director of Selective Service rejected the findings of fact of the hearing officer or determined that the relator did not object to participation in any war under any circumstances because of the compelling voice of his conscience, the District Court should dismiss the writ of habeas corpus. On the other hand, if the District Court shall find that the Director of Selective Service adopted the findings of fact of the hearing officer or determined that the relator did object to participation in any war under any circumstances because of the compelling voice of his conscience, the writ should be sustained. Mahler v. Eby, 264 U.S. 32, 46, 44 S.Ct. 283, 68 L.Ed. 549; United States ex rel. Di Paola v. Reimer, 2 Cir., 102 F.2d 40, 42."

Of course the Director was not bound to accept the findings of the hearing officer. 50 U.S.C.A.Appendix, § 305(g). And his certificate in the form of a statement under oath shows that he did not. It reads:

"The entire file in the appeal to the President of Frederick U. Reel, Order No. 419, Local Board No. 2, Washington, D. C., taken by the State Director from the classification of Board of Appeal No. 1, Washington, D. C., was forwarded to the Director of Selective Service as required by Section 628.4(c), Selective Service Regulations. On September 17, 1943, acting for the President and as Director of Selective Service, I classified Reel in Class 1-A. The practice of writing explanatory decisions on appeals to the President has not been followed since September 1942, therefore no such explanatory decision was written in this case. In this case as in all other cases considered by me, I considered all of the information in the file including the recommendation of the Department of Justice and the Report of the Hearing Officer and classified Reel in Class 1-A because the information in his file convinced me that he was not sincere in his claim that he was conscientiously opposed to war in any form. Lewis B. Hershey."

Every right to a full and fair hearing by his local board, by the appeal board, and on appeal to the President was accorded this appellant. He has no grievance except that the administrative agencies which considered his case in compliance with the statute and applicable regulations did not accept his evidence at face value and consequently did not find that he was

"conscientiously opposed to participation in war in any form." We cannot make findings of fact or treat as proved what the trier of the facts refused to find. Even if the evidence has been all one way on that subject, and it was not, we would have no power to substitute our judgment for that of the Director as to the weight of the appellant's evidence and the credibility of his witnesses. See Stern, Review of Findings of Administrators, Judges and Juries; A Comparative Analysis (1944) 58 Harv.L.Rev. 70, 103.

I would affirm the judgment.