**UNITED STATES ex rel. REEL et al. v. BADT, Captain, U. S. N.**

**No. 278.**

Circuit Court of Appeals, Second Circuit.

April 13, 1944.

Charles A. Horsky and Amy Ruth Mahin, both of Washington, D. C., and David L. Landy, of Buffalo, N. Y. (Covington, Burling, Rublee, Acheson & Shorb, of Washington, D. C., of counsel), for relator.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Nathan T. Elliff, Sp. Asst. to Atty. Gen., and Goodman A. Sarachan, Asst. U. S. Atty., of Rochester, N. Y., of counsel), for respondent-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a petition for a writ of habeas corpus on behalf of Frederick U. Reel. After registration under the Selective Training and Service Act, 50 U.S.C.A. Ap-

pendix, § 301 et seq., the relator claimed exemption from both combatant and non-combatant service by reason of conscientious objections to war based on religious training and belief. His local board rejected his claim to exemption and classified him in 1–A. Thereupon he took an appeal to the appeal board on the ground that he should have been classified in 4–E. A hearing was had before E. Barrett Prettyman, Hearing Officer for the Department of Justice, and after the latter had made his report the appeal of the relator was rejected by the appeal board, which, however, made no findings of fact but simply affirmed the 1–A classification made by the local board. Thereafter a request was made by Reel for a review of the action of the appeal board and an appeal to the President of the United States; as a result of which request an appeal to the President was taken by the Director for Selective Service on Reel's behalf. Upon this appeal the 1–A classification of Reel was finally affirmed.

The hearing officer reported to the appeal board that the registrant was born at Milwaukee, Wisconsin, on December 23, 1916, had received a B. A. degree and taken three years of law at the University of Wisconsin, and was at the time of the hearing employed as an attorney in the Department of Labor, that he did not belong to any religious sect or organization, but said that he believed it "wrong to participate, either directly or indirectly, in the conduct of war, or in any other activity intended to destroy human lives"; and further stated that his belief had come about through "study of the war of 1914-'18—causes and results; the study of European and American history; the teachings of my father; certain books—primarily 'Labels' by A. Hamilton Gibbs—which I read while in the upper grades, and lectures by Rev. John Haynes Holmes, primarily 'The Unknown Soldier Speaks' which I read when in high school."

The hearing officer also referred to a speech the relator had made in March 1936 while a student at the University of Wisconsin, which contained an ardent presentation of his objections to war. The hearing officer also reported that he had told the relator "that there seemed to be no religious basis" for the latter's "views". The hearing officer further said in his report:

"This registrant is intelligent, well-educated and a real pacifist since his college days. There can be no doubt as to the sincerity of his opposition to war. The question in the case is whether it is by reason of religious training and belief. He denies any belief in a Deity, except in so far as there may be a moral force in the Universe. No reference to the latter appears in his original papers but was advanced by him at the hearing in the course of a discussion of the necessity for a religious training and belief as a basis for exemption. The witness Frank, who is registrant's first cousin and a highly intelligent person, stated both to the agent and at the hearing that registrant's view was that of a philosophical humanitarian. Mr. Frank added the view that this philosophy came so close to a religion that it might very well be a substitute for it. This statement perhaps epitomizes the question in the case.

"As the hearing officer understands humanitarianism, it is the view that mankind is sufficient to itself, that it owes no obligation to any power except humankind and that it may achieve perfection in and of itself without the interposition of any Deity or supernatural power. As this hearing officer has said in other opinions, he is of the view that 'a religious belief' necessarily connotes some concept of Deity. Freedom of religion means the freedom to worship. To the man on the street, the word 'religious' obviously means something connected with the Church or with worship. This is exemplified in this particular case by the repeated statements of witnesses that this registrant is not 'religious'. Among scholars the word 'religion' certainly involves Deity and worship. Polytheism, monotheism, primitive religion, higher religion, ethical religions, universal religions are all terms used by scholars in discussing man's beliefs as to supernatural power and the relationship of humankind to such power. 'Ethical' and 'religious' are not synonymous terms. The word 'worship' describes an attitude toward a power or a person; not used to describe devotion to an idea.

"Moreover, it seems clear to this hearing officer that Congress did not intend to exempt from military service every person who thinks that war is wrong. Most people believe that war is wrong. But leaving out the supernatural, the question whether to war or not to war depends upon a relative weighing of the wrong of war as against the evil results of not warring. So far as that is a sociological, political, ethical or merely moral question, Congress, as

the civil authority, has decided it for the entire population. The obligations of a citizen and the right of the civil authority enter into the scale, and the civil authority has the right to speak and to decide the necessity for war. It is only when an obligation to a power superior to the civil authority, that is to a supernatural power, enters the question that Congress yields the right to require military service.

"This exemption was intended by Congress as an acknowledgment of the right of an individual to believe that a supernatural power, superior to the civil state, might decree that an individual refuse military service, even in the face of the necessities of the civil state for such service. Congress did not mean by this exemption to permit any person who feels merely as a matter of sociology or of philosophy or of human relationship that war is wrong, or that he dislikes the idea of killing a fellow human being, to escape military service.

"Upon the foregoing bases, the hearing officer recommends that this registrant be denied exemption. Even though he be a sincere philosophic humanitarian, which may be regarded as a sociological concept of the highest order, nevertheless his conviction does not come within either the terms or the intent of the statute. If the Appeal Board, or other reviewing authority, be of a different opinion as to the meaning and intent of the statute, and if the scope of the statute be any broader than the meaning hereinabove indicated, this registrant should be exempted.

"There are one or two minor items which may enter into consideration of this case. Registrant, being a graduate and practising lawyer, has taken the oath of office as a Federal employee. While, under the ruling on appeal to the President in the Vickery case, this is not conclusive, it may be considered an element. In addition to his conscientious objection, this registrant also claimed exemption on three other grounds, namely, his occupation, a claim to physical defect, and the dependency of his mother.

\*     \*     \*     \*     \*

"It is recommended that the appeal of the registrant based upon grounds of conscientious objection be not sustained."

█ It is evident from the foregoing that the hearing officer, though referring at the end of his report to certain considerations which militate against the claim that the relator is a conscientious objector, placed his decision upon the ground that relator was not a conscientious objector because his opposition to war was based on humanitarian considerations and not on any obligation to a Deity or supernatural power. In other words, he reached a conclusion as a matter of law which was directly opposed to our decision in United States v. Kauten, 2 Cir., 133 F.2d 703. There we said that "a conscientious objection to participation in any war under any circumstances \* \* \* may be the basis of exemption under the Act." 133 F.2d page 708. We also said that such an objection "may justly be regarded as a response of the individual to an inward mentor, call it conscience or God, that is for many persons at the present time the equivalent of what has always been thought a religious impulse."

If, in affirming the action of the local board, the board of appeal and General Hershey, the Director of Selective Service acting for the President pursuant to Executive Order Dec. 23, 1940, No. 8619, adopted the findings of fact of the hearing officer, the relator should have been classified as a conscientious objector. In that event the writ of habeas corpus should have been sustained and the relator remanded for a reclassification. Indeed this was expressly admitted by the hearing officer for he said if the "reviewing authority, be of a different opinion as to the meaning and intent of the statute, and if the scope of the statute be any broader than the meaning hereinabove indicated, this registrant should be exempted."

The record presented is such that we cannot say whether either the appeal board or General Hershey adopted the findings of the hearing officer, or rejected the claim of the relator on the ground that the proof which he adduced failed to show that he objected "to participation in any war under any circumstances" because of the compelling voice of his conscience. They may have decided that his objections were not genuine, or they may have decided that they were genuine but not prompted by a belief that they were required by God's commands.

It is provided in U.S.C.A. Title 50 Appendix, Sec. 305(g) that: "The appeal board shall give consideration to but shall not be bound to follow the recommendation of the Department of Justice together with the record on appeal from the local board

in making its decision." There is nothing in the statutes or regulations which requires either of the appellate tribunals to make findings. Yet the report of the hearing officer which is required under circumstances like the present involves the making of findings as a step in furnishing recommendations by the Department of Justice to the appeal board, pursuant to regulations, Sec. 627.25. While the board of appeal and the President's agent need not follow these recommendations, we have no reason to suppose that they may accept the facts found and disregard their legal effect. Such a procedure would seem to go against the growing tendency to have the processes of administrative tribunals sufficiently explicit to reveal, so far as may be reasonably practicable, whether or not they are keeping within the statute under which they purport to act. To accomplish this in the present case nothing would have to be done by the appellate tribunal except to state whether the findings of the hearing officer were or were not accepted. This could readily be accomplished by an amended order reciting that it accepted, or did not accept, the finding of the hearing officer to the effect that unless the statute be so construed as to require belief in a supernatural power the relator should be exempted.

In United States ex rel. Brandon v. Downer, 2 Cir., 139 F.2d 761, 763, a writ of habeas corpus was dismissed under circumstances closely resembling the case at bar. There the hearing officer had reported that the registrant was "sincere in his conscientious objection to war and military service", and had recommended that his claim be sustained. The appeal board, however, disallowed the claim. But at the hearing of the writ of habeas corpus the chairman of the appeal board gave as reasons for its decision that the relator was not entitled to exemption because he did not believe in God, and, therefore, his objection was not based on religious training and belief, and because he did not have "a compelling moral conviction" against war in any form, since he had previously taken and failed to pass an eye examination preliminary to enlistment in the Air Corps. We sustained the board only because it was shown that the second ground would support the decision. If the decision had rested solely on the first ground it would have been necessary to allow a writ of habeas corpus because of the rule of United States v. Kauten, 2 Cir., 133 F.2d 703.

The fact that the appeal board and the Director of Selective Service affirmed the action of the local board does not, we think, show, as the government contends, that they rejected the findings of fact of the hearing officer. Yet, if they accepted such findings, there was no basis for not holding the relator exempt.

The decision in Bowles v. United States, 319 U.S. 33, 63 S.Ct. 912, 87 L.Ed. 1194, is cited by the government as supporting their contention that the appellate tribunals decided to reject the claim of exemption without being guided in any way by the report of the hearing officer. But that decision did not deal with a situation where there was a finding of fact and conclusion of law by the hearing officer as to which the appeal board and director did no more than reach the same conclusion as to the registrant's classification that the hearing officer had reached; for there the Director of Selective Service had made a specific finding which negatived the registrant's claim.

We think that the machinery set up by the statute and regulations for advice to the appellate tribunals by the Department of Justice, through the agency of the hearing officer, ought to be available to clarify the result on appeal, though not, of course to control it. The procedure which we deem the proper one is in no sense burdensome. There will be no need of any findings or opinion, unless the appellate tribunals should find it simpler and more desirable to render specific findings of their own. It will require nothing more than an indication as to whether they accept or reject the findings of the hearing officer. With such information any court called upon to pass on the regularity of the proceedings can know how far the appellate tribunals could have been affected in any respect by a report of the hearing officer which was not, as in the present case, in conformity with the statute. It seems to us highly undesirable that a litigant should be given a grievance based upon an erroneous interpretation of the law by the hearing officer which the appellate tribunals were bound to consider, even though not bound to follow.

The relator can only secure exemption if it is found that the Director of Selective Service has held that he objected to "participation in any war under any circumstances because of the compelling voice of his conscience." It is not estab-

.lished that this was the holding, though we think it is equally not established just what the holding was. Under the circumstances, we shall not order the relator discharged from custody, but require him to be remanded for a further hearing before the District Court, in order that the latter may ascertain whether or not the Director of Selective Service (as the final appellate tribunal in this case) adopted the findings of fact of the hearing officer. This may be ascertained either by obtaining the testimony of the Director or by a certificate by him as to his action which he may furnish to the District Court. If, as a result, it shall be found that the Director of Selective Service rejected the findings of fact of the hearing officer or determined that the relator did not object to participation in any war under any circumstances because of the compelling voice of his conscience, the District Court should dismiss the writ of habeas corpus. On the other hand, if the District Court shall find that the Director of Selective Service adopted the findings of fact of the hearing officer or determined that the relator did object to participation in any war under any circumstances because of the compelling voice of his conscience, the writ should be sustained. Mahler v. Eby, 264 U.S. 32, 46, 44 S.Ct. 283, 68 L.Ed. 549; United States ex rel. Di Paola v. Reimer, 2 Cir., 102 F.2d 40, 42.

For the foregoing reasons the order of the District Court is reversed and the proceeding remanded to the District Court with directions to proceed in conformity with this opinion.