Kenneth Elmer YPPARILA, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 4937.

United States Court of Appeals,
Tenth Circuit.

Dec. 22, 1954.

William H. Erickson, Denver, Colo. (Hayden Covington, Brooklyn, N. Y., on the briefs), for appellant.

Robert D. Inman, Asst. U. S. Atty., Boulder, Colo. (Donald E. Kelley, U. S. Atty., Denver, Colo., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

Ypparila was charged by information with refusing to submit to induction in violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 462(a). He waived trial by jury. On a trial to the court he was found guilty and sentenced and has appealed.

The facts are not in dispute. Ypparila was born October 2, 1927. He duly registered with Selective Service Board No. 26 at Belle Fourche, South Dakota. On September 24, 1948, the Local Board mailed him a classification questionnaire, which he filled out and returned. In answer to Series IX—Agricultural Occupation, he stated that he was engaged in farming a tract of approximately 200 acres; that the farm produced hay and grain; that he ran cattle and sheep and raised chickens; that the total value of the products sold, consisting principally of eggs, cream and cattle, was $3500, and that he also drove a school bus.

In the questionnaire he stated that he had an elementary and high school education.

In answer to Series XIV, he stated that by religious training and belief he was conscientiously opposed to participation in war in any form and requested that he be furnished with the Special Form for Conscientious Objector.

He further stated in his questionnaire that, in his opinion, his classification should be "Class C" on account of his agricultural occupation.

The Special Form for Conscientious Objector was mailed to him and he returned it to the Local Board on October 4, 1948. In such special form he stated that by reason of his religious training and belief he was conscientiously opposed to participation in war in any form and was further conscientiously opposed to participation in noncombatant training or service. He stated that he believed in a Supreme Being and that the nature of his belief which was the basis of his claim was that it is wrong to participate in anything "where you might be forced to kill or do property damage." In answer to the question "Under what circumstances, if any, do you believe in the use of force," he answered, "I don't believe in force of any kind." In explaining how, when, and from whom, or from what source, he received the training and acquired the belief which was the basis of his claim, he stated: "I have read the Holy Scriptures all my life, and from the Bible." He stated that he did not rely upon any individual for religious guidance. He made no reply to paragraph 6 of Series II of the form, which requested him to describe the actions and behavior in his life which, in his opinion, most conspicuously demonstrate the consistency and depth of his religious convictions. In answer to the question, "Have you ever given public expression, written or oral, to the views herein expressed as the basis for your claim, * * *" he stated, "None." He gave no answer to the request that he state the religious denomination or sect of his father and his mother. He stated that he was not a member of a religious sect or organization. In response to the request in Series V that he give the names and other information concerning persons who could supply information as to the sincerity of his professed convictions against participation in war, he answered, "None."

In August, 1950, the Local Board mailed a second questionnaire to Ypparila for the reason stated by the Board, that it thought the information should be brought up to date. Ypparila returned that questionnaire prior to August 19, 1950. He signed the conscientious objector portion of the questionnaire and again requested that he be furnished with the Special Form for Conscientious Objector. However, the Local Board did not send him such special form after he returned the second questionnaire.

In the second questionnaire, Ypparila stated that he had been engaged in farming all his life; that he was actually and personally responsible for the operation of a 200-acre farm which he operated with his father; that the cultivated portion of the farm consisted of 30 acres of corn, 100 acres of small grains, and 70 acres of hay; that he ran 40 cattle, 75 sheep, and raised 700 chickens; that the value of the products sold during the last crop year was $5000 and was derived mainly from the sale of eggs, cream, and cattle, and that he was engaged in driving a school bus.

On August 19, 1950, the Local Board classified him as 1–A. It notified him of such classification on August 21, 1950. He appeared before the Local Board on August 26, 1950. The hearing lasted approximately 45 minutes, 15 minutes of which was devoted to his conscientious objector claim and 30 minutes to his claim for agricultural deferment. A summary of the information given on such personal appearance sets forth that Ypparila stated he worked on his father's farm; that he had a brother 18 years of age and two married sisters; that his father was 66 years of age, had a

bad heart and injured arm and was unable to do much work; that his mother was 65 years of age; that the brother helped on the farm; that the income from the farm in 1949 was about $5000, received from the sale of cream, chickens, eggs, and cattle; that he ran 40 head of cattle and 75 sheep and kept two horses; that most of the farming was done by tractor; that he had driven a school bus for four years on Monday to Friday, inclusive, of each week; that the school bus trip was about 28 miles; that it took about two hours to make the trip; that he received about $95 a month salary as bus driver; that he owned a house in Newell, South Dakota, into which his parents planned to move; that his father's farm consisted of 240 acres, 100 acres of which were irrigated; that registrant also owned a farm of 200 acres, 65 acres of which were irrigated, which he had purchased with money borrowed from his sister.

The Board reached the conclusion that because Ypparila had time to spend two hours a day driving a school bus, his presence on the farm was not necessarily required. On August 26, 1950, it again classified him as 1-A.

On September 5, 1950, Ypparila took an appeal from his 1-A classification, in which he stated that he believed "his proper classification is II-C." On September 8, 1950, the Local Board forwarded the file to the State Director. The appeal was not acted upon by the State Appeal Board, but was returned to the Local Board in October, 1950. On October 25, 1950, the Local Board again classified Ypparila as 1-A and notified him of such action. He was ordered to take a physical examination on December 28, 1950, and on January 15, 1951, was notified of his physical acceptability. Apparently, the file was then returned to the State Appeal Board.

Early in October, 1951, Ypparila submitted to the Local Board certain statements in support of his claim for classification as a conscientious objector. One was in the form of a letter dated March 20, 1951, but sworn to on October 2, 1951. In that letter he stated that for the past ten years his father had actively engaged in Bible study and as a result registrant had come to know "the requirements of a Christian." He cited quotations from the Bible in support of his claim that it was wrong to engage in worldly wars between nations. He stated that he was not a pacifist and believed that it was proper to engage in theocratic wars and would be proper to engage in the war prophesied in Revelations, commonly known as Armageddon, and cited Bible references in support of his views. He further stated that he was engaged in home Bible study in preparation for future ministerial work. He also filed with the letter a copy of the "Watchtower," issue of February 1, 1951, and referred to the article therein, "Why Jehovah's Witnesses Are Not Pacifists," and stated it contained much supplementary information from the Scriptures "concerning the stand of a Christian toward war." He also submitted a statement of Willie Dee Kent, Circuit Servant, Wyoming No. 1, and a sworn statement from his father, both dated September 22, 1951. Both supported his claim. His father stated:

"I have always taught my son Kenneth Elmer Ypparila to respect God's word to live up to the standards of a Christian. It was natural for Elmer, when the issue of participating in war in any form came up, to follow the Christ-like example of conscientiously objecting to participating in war in any form."

Registrant also submitted a statement from Theodore R. Chiller, Company Servant of the Jehovah's Witnesses in Rawlins, Wyoming, dated September 29, 1951, and a statement of William Chiller, an Assistant Company Servant, dated October 4, 1951, both of which were sworn to. They supported Ypparila's claim and stated that he was baptized at Sheridan, Wyoming, at an assembly of Jehovah's Witnesses on July 8, 1951.

After the file reached the State Appeal Board a second time it was referred to the Department of Justice. The Hear-

ing Officer for the Department of Justice conducted a hearing on October 4, 1951, at which Ypparila appeared in person, accompanied by William A. Chiller and a Thomas Janner. The Hearing Officer recommended that Ypparila be classified as 4–E.[1] The Department of Justice, acting through T. Oscar Smith, Special Assistant to the Attorney General, on December 17, 1951, forwarded the file with the Hearing Officer's report to the State Appeal Board and concurred in the recommendation of the Hearing Officer.

The State Board classified Ypparila as 1–A–O on January 15, 1952. From that classification, Ypparila appealed. In his notice of appeal, he declared that he was opposed not only to active combat, but to war in any form. He stated, "I shall never let up in my fight to receive justice," and requested that the file be sent to the President of the United States. The file was then sent to the Selective Service Headquarters of South Dakota on November 14, 1952. The State Director took an appeal to the President.

The National Selective Service Appeal Board, on January 26, 1953, classified Ypparila in Class 1–A.

The article in the "Watchtower," referred to above, stated that Jehovah's Witnesses are not pacifists; that they are not against war between nations, and do not interfere with the war efforts of the nations, nor with anyone who can conscientiously join in such efforts; that they are opposed to participation in worldly wars between nations, but are not opposed to participation in theocratic wars, because they are commanded by Jehovah, and that they are not opposed to participation in the war prophesied in Revelations, commonly known as Armageddon, because that would be the "war of the great day of God the Almighty."

After that article came out in the "Watchtower," the Department of Justice began a consideration of the question whether Jehovah's Witnesses, in view of the fact that they believed in participation in theocratic wars and in participation in the war prophesied in Revelations, could make the claim that they are "conscientiously opposed to participation in war in any form" and thus bring themselves within the provisions of § 6(j) of the Universal Military Training and Service Act, 62 Stat. 604, 612, 50 U.S.C.A.Appendix, § 456(j).

Early in 1951, the Department of Justice began to rule, in individual cases referred to it by State Boards, that registrants who were Jehovah's Witnesses and believed in participation in

---

1. In his report the Hearing Officer stated:

"a. Although the notice of appeal states that Registrant's proper classification is 2–C, it was his intention to appeal also from the Board's rejection of his claim as a conscientious objector.

"b. Registrant has been actively affiliated with Jehovah's witnesses since about November of 1950, but states that he had read their literature and had been impressed by it long prior to that time.

"c. Registrant states, and there is no reason to doubt it, that he is conscientiously attending meetings and classes of the Jehovah witnesses at Kingdom Hall in Newell, South Dakota, and that he sincerely and conscientiously believes in the tenets of that organization which, of course, includes a conscientious opposition to worldly conflict.

"d. Inasmuch as Registrant's active participation in the affairs of the Jehovah witnesses dates from the time shortly

after his appeal was rejected it could be reasonably concluded that there was some connection between his draft status and his active interest in this religious group. However, the hearing developed nothing which would justify any finding that Registrant is not sincere in his beliefs. Therefore, inasmuch as the determination of conscientious objection must be made as of the time of hearing, there is no alternative but to find as a result of this hearing that Registrant is conscientiously opposed to participation in war.

"6. Registrant was accompanied by two fellow members of Jehovah witnesses, one of whom vouched at some length for the Registrant's sincerity and progress in his religious studies.

"7. Registrant's answers to questions were typically Jehovah witness answers. However, there was nothing to indicate insincerity."

theocratic wars and the war prophesied in Revelations were not entitled to claim deferment under § 6(j), supra, for the reason that they are not conscientiously opposed to participation in war in any form.

 The National Board gave no reason for its classification of Ypparila in 1–A and in refusing to follow the recommendation of the Hearing Officer and the Department of Justice and the action of the State Appeal Board. The Appeal Board is not required to make formal findings or render opinions as a basis for its action. But, we are of the opinion that in the instant case, it should have indicated whether it based its classification on the legal proposition that in view of Ypparila's statements that he was not a pacifist, that he believed in participation in theocratic wars and in the war prophesied in Revelations, he, therefore, could not claim that he was conscientiously opposed to participation in war in any form, or that it disagreed with the findings of the Hearing Officer, approved by the Department of Justice, and in part followed by the State Appeal Board. If it based its action on the legal ground, its classification was clearly contrary to law and arbitrary, rendering its action a nullity.[2]

In view of the fact that the National Board may have based its action on an erroneous interpretation of the relevant statute, we think it should have made its processes sufficiently explicit to make it possible to determine whether its action was in conformity with the relevant statute.

We conclude that under the facts and circumstances here presented, the failure of the National Board, at least, to informally state its reasons for its classification was a denial of procedural due process.[3]

For that reason, the judgment is reversed and the cause is remanded, with instructions to dismiss the information.

---

2. Jessen v. United States, 10 Cir., 212 F. 2d 897, 899, and cases cited in Note 2.

3. United States ex rel. Reel v. Badt, 2 Cir., 141 F.2d 845, 848; United States v. Hagaman, 3 Cir., 213 F.2d 86, 89.