Joe Mike **AYERS**, Appellant,

v.

**UNITED STATES of America**,
Appellee.

No. 14646.

United States Court of Appeals
Ninth Circuit.

Nov. 9, 1956.

Writ of Certiorari Denied
Feb. 25, 1957. See 77 S.Ct. 563.

Elliott & Murray, William L. Murray, Santa Ana, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Richard L. Sullivan, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before POPE, FEE and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Ayers was convicted of a failure to report for induction into the military service in accordance with the order of a local board. The criminal case was tried before a judge of the United States District Court, sitting without a jury by consent. The question decided therefore was one of fact. The judge found upon the facts that defendant was guilty. The proceeding was not a review of the record before the Selective Service Board. Such records only enter the case as evidence to show that appropriate notice was given to defendant to report. Defendant had two witnesses, himself and another, who testified in the case. Upon appeal there is no transcript of record, so we do not know what either of the witnesses said in the District Court.

The Selective Service record was stipulated to and admitted in evidence. Upon the basis of this record, defendant Ayers now asks reversal of the conviction. This record showed that Ayers registered under the Selective Service system and came up before Local Board No. 140, San Diego County. On July 11, 1950, he was classified by the Local Board in Class 1–A and notified of that action. Shortly thereafter, he sent a letter to the Board appealing his classification on the ground that he was studying for the ministry. Thereupon, Pasadena College verified the statement that registrant was preparing for the ministry in that

institution. As a result, the Board placed Ayers in Class 4–D and notified him.

Long Beach State College notified the Board on February 17, 1953, according to the record, that Ayers was enrolled there as a special student with only twelve units of instruction. By letter dated February 18, the Local Board notified registrant that additional information must be supplied if he were to continue in Class 4–D. In a letter dated the same day, Ayers claimed for the first time to be conscientiously opposed to war. On February 24, the Local Board received a second letter from him expanding his reasons for conscientious objection and for transferring from a theological school to a state college. Ayers filed with the Board the special form for conscientious objector, which was almost entirely filled out in the handwriting of a girl who had assisted him.

After receipt of this special form, the Local Board on March 4, 1953, again classified Ayers in Class 1–A and notified him by mail on March 5, 1953.

Ayers thereupon requested a personal appearance and appealed this classification of 1–A. As a result, on March 19, 1953, he appeared personally before the Board, and, as a result, the Board agreed to classify him in 1–O. He apparently based his plea in part upon his membership in International Christian Revival Association. Ayers sent a letter dated March 19, 1953, to confirm his statement of belief, which contains the statement:

"I will stand and fight for this our America or the world, but I refuse to use the means which the world is using to gain peace."

In a previous letter, he had said:

"I'm in just a small group of people and we are trusting Christ and His word that He will give us a revival for our day."

In regard to this claim, R. R. Sanders, Captain, U.S.A.F., who was coordinator of District Headquarters No. 6, which was set up under Selective Service Regulations,[1] wrote a letter dated April 23, 1953, giving to the Local Board certain facts which had come to his attention concerning the International Christian Revival Association above mentioned, since the registrant was claiming membership in that association as a basis for his current belief. The pertinent information was that the organization consisted of some twenty members, was incorporated in 1951, and had decided on November 18, 1952, that they were conscientiously opposed to war and on that day passed a resolution to that effect. Advice was given as to the action of another Local Board with reference to a member of the same organization. Complaint is chiefly made of the paragraph in the letter:

"In view of the above, it would appear that a classification of 1–O is not warranted under the provisions of Section 1622.14 of the Selective Service Regulations."

Thereafter, on regular forms, Ayers volunteered for civilian work and filed these with the Board on April 30, 1953.

The minutes of the Board do not set forth anything as to meetings or discussions thereafter, except that they show that on May 7, 1953, the Board again classified registrant in Class 1–A. On the next day, notification of this classification was mailed to Ayers. By a letter dated May 13, 1953, registrant appealed the 1–A classification and requested a personal appearance. He enclosed in the letter the "Articles of Belief" of the International Christian Revival Association, to which he belonged. On May 21, 1953, registrant appeared personally before the Local Board and was given another hearing. The Local Board voted to continue registrant in Class 1–A. A copy of the memorandum summarizing what occurred at this personal appearance is contained in the Selective Service file, and on the same day Ayers was notified that he had been continued in Class 1–A.

1. 32 C.F.R. (1956) § 1604.14(a).

On June 18, 1953, the Local Board forwarded the Selective Service file of registrant to the Appeal Board. Thereafter, the United States Attorney moved to secure an advisory recommendation from the Department of Justice. Ayers appeared before the hearing officer, who recommended that his claim for exemption be not sustained. In the report of the Department of Justice, it is stated:

"The Hearing Officer reported that the registrant stated that he was opposed to participation in war in any form. The registrant advised the Hearing Officer, however, that he believed that it was proper for governments to carry on wars and that people should be in the Army. He stated that he believed that it is satisfactory for those who choose to protect themselves through the use of force. He does not believe that he should participate in war." Government's Exhibit 1, page 76.

His relation to the association upon which eventually he based refusal of induction is quite confused. The Federal Bureau of Investigation reported he was dropped from the rolls thereof "in approximately August, 1953." At the hearing, it was shown he was a member accepted as of January 31, 1954. On April 15, 1954, the Appeal Board placed registrant in Class 1–A. On April 19, 1954, the Local Board received the Selective Service file from the Appeal Board. Ayers was notified of his classification in Class 1–A by the Board on the same date. On May 4, 1954, defendant was ordered to report for induction May 19. He requested a transfer to Local Board No. 135, which was granted, and Local Board No. 135 ordered defendant to report for induction June 9, 1954, upon which day he reported for induction but refused to submit thereto.

The points raised on appeal are numerous. It is said that the order to report for induction was void because the Local Board (1) applied an erroneous theory of law in classifying defendant, (2) acted arbitrarily, capriciously and without basis in fact in reclassifying him, (3) acted contrary to regulations by reopening and reconsidering the classification of Ayers, (4) denied Ayers access to information which was the basis of the classification, and (5) denied him a hearing.

The first and second points are considered together. The attack upon the classification of the Board is based simply upon the fact that the letter of Sanders appears in the file. From its mere presence, it is argued that the members were overwhelmed and their judgment vitiated and that an erroneous theory of law was injected into the case. But all this is pure speculation. Again, it is argued that the Board acted arbitrarily and capriciously and without basis of fact in making the classification. It is demonstrable that the Board had firm foundation in the personality and actions of Ayers, and the mere presence of the letter of Sanders in the record of the Board is no proof to the contrary.

In truth, the letter of Captain Sanders really pointed out facts which may not have been previously noticed by or known to the Board. The recent date of the resolution against war by the group of which Ayers claimed to be a member may possibly have been one of the elements in classifying Ayers a second time as 1–A. They may have believed the training and beliefs of Ayers were exemplified by this organization, and the most recent change was accomplished after he was threatened with military service. Captain Sanders was a "District Coordinator," duly authorized by law and regulations [2] to communicate and cooperate with the Local Board. Under the Selective Service System, many of these members of state organizations were properly military officers or had military titles.[3] The Local Boards

---

2. 32 C.F.R. (1956) §§ 1604.12, 1604.14.

3. 32 C.F.R. (1956) § 1604.14(a) specifical-

ly authorizes military personnel to be on the staffs of State Headquarters for Selective Service.

would have difficulty in learning the facts about religious organizations, some of which are national or international in scope and others of which are relatively small and unknown, as was the case here. There has been no claim that the facts stated in the letter were erroneous or misleading. There was no fraud charged, and on the facts there could not have been. The letter was not directed at Ayers personally, but set out facts concerning the organization whose teachings Ayers was claiming gave him immunity. There is no principle which indicates that the Local Board is confined in the determination of fact to examine only materials which Ayers had brought before them.

The record of this criminal case is fair and complete on its face. The government proved affirmatively each and every material fact necessary for conviction. The record was submitted to the trial judge, together with the testimony of defendant and his witnesses, which is not before this Court. There is no showing that anyone testified that the Local Board corruptly or prejudicially classified Ayers.[4] There is no testimony or any record before this Court that the Board gave any weight to the letter of Captain Sanders. This Court cannot decide on such a record that the Board did not give full and impartial consideration to all the facts adduced on both sides and to the personal beliefs and training of the registrant.

■ The trial judge tried the case and found on the showing before him that defendant was guilty. Since that whole record is not before this Court and there is sufficient evidence to sustain every factor necessary for conviction, we are powerless to set the judgment aside.

■ It was the essence of the function of the Local Board to examine all the facts and the material on both sides relating to this question. The mere fact that the particular information involved was received from a military officer, who had a legitimate function under the Selective Service System, should not taint the information which he proffered.

There is no showing that the members of the Local Board were overwhelmed by this letter or surrendered their judgment on the facts and the personality of Ayers because it appears in their files. Since it was their duty to weigh these facts, there is no reason, either in the record or as a matter of general knowledge, to question their conclusion.

■■ There is no suggestion in the record anywhere, nor did defendant apparently make an attempt to prove in the District Court, that the Local Board applied an erroneous theory of law in classifying the registrant in this case. The opinion which the Captain volunteered in the letter was apparently a conclusion of fact. But Ayers was later before them in person, urging the contrary conclusions of fact. So long as the Board gave a fair hearing, all of the facts were within their competence. Captain Sanders had no power to make classifications himself. The Board was not bound to adopt any conclusion or opinion of his. Besides, the opinion at which the Board finally arrived as to the classification of Ayers has not been found so erroneous or shocking by the trial court as to require that court to set it aside. Nor should this Court substitute its judgment for the judgment of the Local Board[5] or the District Court, each of which apparently acted upon evidence which justified its conclusion.

The record shows clearly that the Local Board had ample basis for its several classifications of Ayers in 1–A, based up-

---

4. The courts have come a long way since Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, rehearing denied, 321 U.S. 802, 64 S.Ct. 517, 88 L. Ed. 1089; 322 U.S. 770, 64 S.Ct. 1147, 88 L.Ed. 1595, where the trial courts were directed not to allow evidence upon such subjects to be submitted to the triers of fact. But they have not yet come to the point where speculation can undermine a judgment.

5. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.

on his personal attitude, training and belief as he explained it to them.

█ The thinking of defendant all through this period is shown by the record to have been extremely confused. He was attending a theological college and got into difficulty because he could not go along with the thinking of his teachers or his fellow students and attacked them, according to his own statement. He then transferred to a secular college. He was enrolled in an organization which did not pass a resolution that its members were opposed to war until November 18, 1952. After his reclassification by the Local Board, he was apparently dropped from membership and later re-enrolled in 1954. The Local Board was entitled to consider this instability of belief and principles. We may therefore answer the second point by saying that the record does not show that the Local Board acted arbitrarily and capriciously and without basis in fact in for the third time classifying Ayers as 1–A.

█ Third, the regulations establish that the Local Board did not act contrary to regulations in changing the classification. As to notice of reclassification, it is stated:

"*Notice of action when classification considered anew.* When the local board reopens the registrant's classification, it shall, as soon as practicable after it has again classified the registrant, mail notice thereof on [the designated forms] * * ". 32 C.F.R. (1956) § 1625.12.

As to hearing on reclassification, it is stated:

"*Right of appeal following reopening of classification.* Each such classification shall be followed by the same right of appearance before the local board and the same right of appeal as in the case of an original classification." 32 C.F.R. (1956) § 1625.13.

As to the ordinary right, upon original classification, for personal appearance

before the Board, the Regulations provide:

"Every registrant, after his classification is determined by the local board * * * shall have an opportunity to appear in person before the member or members of the local board * * * " 32 C.F.R. (1956) § 1624.1(a).

There was no denial of applicant's protections under these Regulations.

█ Furthermore, the Local Board had a perfect right, if facts were called to its attention which might have a bearing upon the personal attitude and beliefs of applicant, to reclassify Ayers without giving him any notification that such action was impending. The Regulations state that the Local Board can reclassify "upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification." 32 C.F.R. (1956) § 1625.2(b).

█ By Regulations 1625.11, et seq., it is provided that a reopened classification must be considered anew and that all rights of personal appearance, appeal and other privileges must be accorded to registrant. All these privileges were accorded to Ayers, including a personal appearance and a hearing. The information upon which the Board acted may possibly have been that contained in the letter of Captain Sanders, but this Court is not bound to conclude that that was the only basis or even the motivating basis, since, as noted below, the Board is not required to record its inner thoughts and motives. We only know it did have information which apparently had not been considered before.

█ Another claim of defendant is that he was denied access to the information which was the basis of his classification. There is nothing in the record which shows this charge to be true. Since the hearing was held soon afterwards, it is to be assumed that any new information which the Board had was acted upon and discussed at that time.

The fact that he enclosed the "Articles of Belief" of this organization with his demand for personal appearance indicated he thought the belief as a member thereof was pertinent. Since there was a hearing, we must assume that it was a regular one, and, since the files are public for the inspection of a registrant, it must be assumed that he exercised this privilege. This issue was apparently never raised in the trial court. There is positive evidence in this case that the Board offered to Ayers a 1–A–O classification and that Ayers refused it. In any event, the trial judge decided the case on the questions of fact. Since the entire record is not before this Court, his findings must be accepted.

Since the fifth point is an attack upon the procedure of the Local Board, the differentiation of the position of that Board and the Appeal Board must be noted. Classification by a Local Board is the keystone of the process of induction.[6] These Boards are composed of residents of the community in which the registrant has lived. The underlying theory is that everyone called for service in the armed forces is entitled to consideration by the local people who presumably know him best. These Local Boards, of course, therefore reflect community knowledge and feeling. It is nowhere said that such local residents are confined to hearing evidence by the registrant. The information they have concerning him, his character and beliefs, may come from any number of sources. They are required to give him a personal hearing at various stages of the proceeding. A denial of such a hearing is fatal. But the Local Board is not required to state exactly what elements they considered in classification or reclassification. There is no requirement that they keep elaborate recordings of the matters discussed, their meetings or their considerations when changing a classification. The require-

ment that the Local Board keep "minutes"[7] is satisfied by a formal record of action taken and cannot be construed to demand detailed discussions.

The order to report for induction was not void because of the contention that the Local Board denied Ayers a hearing upon his claim to be classified as a conscientious objector. The record shows that he was given a hearing upon each case when he asked for it. The Board showed its fairness by giving full weight to his pleas upon one occasion and only apparently changed its holding in view of evidence of the inconsistency of his conduct and claim of belief.

In summary, the only basis for the argument that the Local Board *in effect* denied a hearing is found in that the Board did not set out affirmatively each step in the consideration given Ayers. But the fallacy of this position lies in the fact that the government was not under any necessity of proving this part of the record at all. It was only under the necessity of proving that the order to report was given and that defendant violated it and failed to report.

It is the duty of the Appeal Board to classify the registrant de novo.[8] Therefore, if there was any possible deviation from due process, it would be corrected on appeal. Tomlinson v. United States, 9 Cir., 216 F.2d 12. The only possible exception to this is where the Local Board refused personal appearance to the registrant.

Neither Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453, nor Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467, applies. The errors complained of here have to do with Local Board procedure, while in the Simmons and Gonzales cases the matters related to appellate procedure. There is no factual basis herein whereby any contention that a résumé of the FBI report was denied Ayers, Simmons v. Unit-

---

6. Knox v. United States, 9 Cir., 200 F.2d 398.

7. 32 C.F.R. (1956) § 1604.58.

8. 32 C.F.R. (1956) § 1626.25(c).

**810**

ed States, supra, or that a copy of the recommendation of the Department of Justice was not sent to him. Gonzales v. United States, supra. As a matter of fact, the record seems to show all these details were carried out.

■ This Court has no authority to substitute its view of the situation for either that of the Local Board or of the Appeal Board, where opportunities for personal appearance were given and personal appearances were actually had. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.

Affirmed.

POPE, Circuit Judge (dissenting).

Whether the appellant was properly given his 1–A classification, or whether he received due process from the selective service boards, is dependent upon the regularity of what transpired before the local board. The fact that the proceedings before the appeal board may have been regular and in accordance with the applicable regulations, does not, under the circumstances here, aid the position of the Government for this case is governed by the rule stated in Knox v. United States, 9 Cir., 200 F.2d 398. In that case, this court, distinguishing the fact situation which obtained in Tyrrell v. United States, 9 Cir., 200 F.2d 8, and in other similar cases where the action of the appeal board was said to have corrected or cured certain irregularities on the part of the local board, said, 200 F.2d at page 402: "Classification by the local board is an indispensable step in the process of induction. The registrant is entitled to have his claims considered and acted upon by these local bodies the membership of which is composed of residents of his own community. An underlying concept of the Selective Service System is that those subject to call for service in the armed forces are to be classified by their neighbors—people who are in a position to know best their backgrounds, their situation and activities." We reaffirmed and restated our holding in the Knox case in Franks v. United States, 9 Cir., 216 F.2d 266, 270.

In short, under the selective service regulations the registrant is entitled initially to a hearing of his claim of conscientious objection by the local board composed of his neighbors, whose opportunity to judge of his honesty and sincerity, because of his personal appearance before them, is greater than that of any appeal board which necessarily is dependent upon the second-hand report of a hearing before a Department of Justice hearing officer. What I am saying is, the registrant is entitled to both the hearing before the local board and the hearing before the appeal board, and the denial of the contemplated hearing before either is a denial of due process called for by the regulations. Such is the holding of the Knox case.

In my view, the case made by the Government was demonstrably insufficient to warrant a conviction. The record of the proceedings before the local board show that on March 19, 1953, after a personal appearance before the Board, the registrant, who had claimed exemption as a conscientious objector by filing the appropriate Form 150, was placed in class I–O. He was then asked to fill out and did execute and return to the board Form 152 required of I–O registrants, indicating his qualifications in the event of assignment to civilian work. Two days after that form was mailed to him, but before it had been returned, the board received from R. R. Sanders, Captain USAF, who described himself as "Coordinator, District 6", the following letter:

"23 April 1953

"Selective Service System
Local Board No. 140
525 'E' Street
San Diego, California

Subject: Ayers, Joe Mike, SS No. 4–140–29–496 International Christian Revival Association

"Gentlemen:

"The subject registrant has been given a classification of I–O because he claims membership in the subject religious organization, which is located at 1841 W. Palmyra Street, Orange, California.

"It so happens that Local Board No. 135, Santa Ana, has recently made an investigation of this organization because one of their registrants is also claiming to be a conscientious objector, and eligible for Class I–O.

"The investigation revealed that this organization has, at present, only some 20 members, and that they are supervised by Mr. George E. Andrus, 5742 E. Thelma Avenue, Buena Park, California. Mr. Andrus was contacted this date, and stated that he was ordained in 1946. He is employed as a teacher in the Santa Ana Junior College. He advised that subject religious organization was incorporated in 1951, and verified a statement made by the Santa Ana registrant that the group decided, on 18 November 1952, that they were conscientiously opposed to war and on that date, passed a resolution to that effect.

"In view of the above it would appear that a classification of I–O is not warranted under the provisions of Section 1622.14 of Selective Service Regulations.

"For your information, the Santa Ana registrant belonging to this organization is, at the present time, a full-time student and is in a student's classification. It is the intention of Local Board No. 135 to place him in Class I–A when he no longer qualifies for a student's classification.

"Very truly yours,
R. R. Sanders
Captain, USAF
Coordinator, District 6."

Form 152, together with an executed Form 151, whereby registrant volunteered for civilian work were received by the board on April 30, 1953. Thereafter and on May 7, 1953, without anything further intervening, and without the making of any minutes of a meeting on that day, the board classified registrant in class I–A. That is where he stayed and that is the classification upon which his prosecution is based. Thereafter his request for a further personal appearance was granted but the board declined to change this I–A classification.

The appellant's contention is that his change of classification from I–O to I–A was based upon erroneous advice contained in the letter from Captain Sanders. The authorities agree that the burden was upon the Government to prove that this recommendation of the Armed Forces officer did not affect the board's decision. The letter of the officer was about as erroneous and misleading as it could possibly be. In the first place, it says that since the organization, of which registrant was a member, had but recently adopted a resolution of conscientious opposition to war, the classification of the appellant as a conscientious objector was not warranted under the regulations. There is nothing better settled than that a man's status as a conscientious objector under the regulations is dependent upon his own personal beliefs, not upon those of the organization of which he is a member. As the Supreme Court said in Sicurella v. United States, 348 U.S. 385, 390, 75 S. Ct. 403, 405, 99 L.Ed. 436: while the belief of the registrant's sect is "relevant", yet "each case must of necessity be based on the particular beliefs of the individual registrant." In deciding that case, the Supreme Court cited United States v. Everngam, D.C., 102 F.Supp. 128, as stating "the correct rule." Everngam was a Catholic. The hearing officer, to whom his case was referred by the appeal board, made a report substantially the same as that which Capt. Sanders made to this local board. The hearing officer said that he too was a Catholic; that he knew all about the Catholic faith, and that the registrant's beliefs were diametrically opposed to the teachings of the Roman Catholic Church and that registrant could not use those teachings as a basis for deferment. He recommended therefore that registrant be retained in class I–A. He made no general finding as to the registrant's own religious training and belief. The court held that the report and recommendation was erroneous and arbitrary.

Another respect in which the advice of the representative of the Armed Forc-

es was in error was in asserting that since another local board had ruled that another member of the same religious organization was not eligible for class I–O, that called for a like ruling on the part of this local board. The error of such a position is manifest.

Finally, the giving and receiving of orders, instructions or opinions from military personnel to draft boards is contrary to the whole concept of the selective service system which is that the process of classification and induction shall be carried on by civilian boards. The regulations (C.F.R. Title 32, § 1604.-22 and § 1604.52) provide with respect both to the appeal boards and the local boards that no member shall be a member of the Armed Forces or any reserve component thereof.

Of course it is conceivable and possible that the action of the local board in changing appellant's classification from I–O to I–A may have been based solely upon the board's further consideration of the evidence which had been before it at the time the I–O classification was given, and that the Captain's letter and its advice had no part in influencing its action. Even so, since appellant had at least made a prima facie case at the time he was given the I–O classification, it would still be problematical whether at the time the board changed the classification to I–A "there [was] some proof that is incompatible with the registrant's proof of exemption." Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132. Cf. Schuman v. United States, 9 Cir., 208 F.2d 801, 804, and Pitts v. United States, 9 Cir., 217 F. 2d 590, 593.

But it is not enough that there was a possibility that the board disregarded or was uninfluenced by the erroneous communication from the Captain. There is nothing more definitely settled than that in a situation of this kind the prosecution must prove that the improper matter or erroneous report or recommendation did not affect the decision of the board.

We have here the precise situation discussed in United States v. Everngam, supra, as follows, 102 F.Supp. at page 131: "It does not appear that any member of the appeal board felt himself bound by this report and recommendation or how far, if at all, it influenced the decision of the appeal board, but that is not enough. The report and recommendation was transmitted to the appeal board to use as an advisory opinion, and was considered and used (as the regulations require) by the appeal board in its subsequent classification of the defendant. *Under such circumstances the prosecution was bound to prove that such invalid report and recommendation of the hearing officer of the Department of Justice did not affect the decision of the appeal board, or any subsequent decision of the local board. No such proof was offered.*" (Emphasis mine.) That language, of course, was used with respect to the action of an appeal board; but the principle there expressed is just as applicable to the action of a local board.

The Everngam case cited with approval the decision in United States ex rel. Levy v. Cain, 2 Cir., 149 F.2d 338, 342, which was another of the decisions expressly approved by the Supreme Court in Sicurella v. United States, supra. In that case, a local board made use of a report and recommendation of an advisory panel which contained improper matter. The court pointed out that it was impossible to know to what extent, if any, the decision of the panel influenced the local board. The relator, Cain, was released from custody.

Another case in the Second Circuit expressly approved in Sicurella was United States v. Balogh, 157 F.2d 939, 943, 944. That case also dealt with the receipt by a local board of an erroneous report or recommendation under such circumstances that the court could not tell whether the local board did or did not rely upon the report. The conviction of the registrant was reversed.

The authoritative statement set forth in the quotation from Everngam, supra,

that "the prosecution was bound to prove that such invalid report and recommendation * * * did not affect the decision", is also stated in Sicurella v. United States, supra, where the court held that "this error of law by the Department, to which the Appeal Board might naturally look for guidance on such questions, must vitiate the entire proceedings at least where it is not clear that the Board relied on some legitimate ground. Here, where it is impossible to determine on exactly which grounds the Appeal Board decided, the integrity of the Selective Service System demands, at least, that the Government not recommend illegal grounds."

When this court decided the case of Shepherd v. United States, 9 Cir., 217 F.2d 942, the Sicurella decision had not come down. Had it been available at that time this court could have made excellent use of the language last quoted for the facts there are not distinguishable from those dealt with in the Sicurella case. In dealing with the absence of evidence as to whether the board did or did not disregard the erroneous advice it had received, we mentioned the possible argument that there might be a presumption that the board acted regularly and properly and disregarded the advice. We said, 217 F.2d at page 946: "[W]e find it difficult to be persuaded in this, a criminal case, that such a presumption is sufficient to negative the likelihood that the board in fact relied upon the erroneous advice of the Department of Justice." We reversed the conviction. See also Batelaan v. United States, 9 Cir., 217 F.2d 946. In the Shepherd case, we followed United States v. Hagaman, 3 Cir., 213 F.2d 86, as did the Tenth Circuit in Ypparila v. United States, 219 F.

2d 465, where the court dealt with action by the National Board which changed the registrant's classification from I–O to I–A. There it was conceded that the National Board was wrong if it reclassified the registrant on the theory that his professed creed would not sustain a claim of conscientious objection to war, (the erroneous theory of Capt. Sanders here). There was nothing to show whether the board acted on this or on another ground. The court cited the case of United States ex rel. Reel v. Badt, 2 Cir., 141 F.2d 845, and said, 213 F.2d at page 89: "In the case last cited the court indicated that such agencies as these boards should make their processes 'sufficiently explicit to reveal, so far as may be reasonably practicable, whether or not they are keeping within the statute under which they purport to act'. 141 F.2d at page 848. Of course such disclosure need not be technical or elaborate. And it is not necessary at all in the usual case where the issue in controversy and the basis of decision are made apparent by the record itself. But in cases like the one now before us, the reclassifying board should indicate in a general and non-technical way why it changed the classification."

The only evidence offered on behalf of the United States was the selective service record which, as I have said, failed to indicate either "in a general and non-technical way", or in any manner whatever, why it changed the classification.[1] The Regulations, Title 22, § 1604.58, required the Board to keep minutes of its meetings. That provision furnished it an opportunity to make its action explicit. Although as stated in the Everngam case, supra, the prosecution was bound to prove that the erroneous report

---

1. The minutes of the registrant's later appearance before the board was wholly unenlightening and hardly understandable. They contained a recital: "He appeared before the board members on March 19, 1953. He was asked if he felt the same about his religious beliefs. He said he did. Board members ex-

plained his views were contrary to our beliefs, and according to the Selective Service regulations he cannot be considered in any other classification but I–A. Therefore the Board could not change his classification." If this indicates anything, it is that the Board had accepted the theories of Capt. Sanders.

and recommendation did not affect the decision of the Board, the Government failed to make a case against appellant and he should have been acquitted.[2]

2. I have said nothing here of another contention of appellant. That is, that he was denied access to the Captain Sanders letter, and an opportunity to refute its statements. Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 412, 99 L.Ed. 467, decided after this case was tried, held that although there is no express regulation to that effect, yet it was "implicit in the Act and Regulations—viewed against our underlying concepts of procedural regularity and basic fair play" that a copy of a Justice Department recommendation to an appeal board must be furnished to a registrant. The same rule should require that this registrant see and have a chance to meet the Captain Sanders letter. The record here fails to show that registrant ever saw or heard of the letter. This matter, differing from that I have discussed in my dissent, is something concerning which the appellant himself might have testified. His testimony at the trial is not a part of the record here. Because of my doubts as to whether the selective service record must itself have shown disclosure of the letter to appellant, I am not prepared to say that the showing here discloses a denial of the right stated in the Gonzales case.

Also, I need say little about the opinion's statement that "There is positive evidence in this case that the board offered Ayers a 1–A–O classification and that Ayers refused it." If that happened just that way it would show another reason why Ayers' classification was void. If the board thought he belonged in 1–A–O it was its duty to put him there, for "it was not for the local board * * * to say that the registrant should not be placed in a certain classification merely because he did not want that classification". Franks v. United States, 9 Cir., 216 F.2d 266, 269. However, I do not so read the record. What happened was that when the board classified Ayers 1–O it asked him if he would accept non-combatant service, "attend the wounded", and he replied he could not.