### UNITED STATES v. KAUTEN.
### No. 134.

Circuit Court of Appeals, Second Circuit.
Feb. 8, 1943.

Julien Cornell, of New York City, for appellant Mathias Kauten.

Mathias F. Correa, U. S. Atty., of New York City (K. Bertram Friedman and Stuart Z. Krinsly, Asst. U. S. Attys, both of New York City, of counsel), for the United States.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendant, Mathias Kauten, was convicted for neglecting to appear for induction into the United States Army pursuant to the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq. He claims that the conviction was erroneous because he was exempt as a conscientious objector under Section 5 (g) of the Selective Training and Service Act.[1]

The following is an outline of the facts: On March 10, 1941, the defendant was classified by his Local Draft Board as 1A. On April 3, 1941, he appealed from the classification on the ground that "by reason of religious training and belief" he was "conscientiously opposed to participation in war in any form." On May 19, 1942, the Board of Appeal affirmed the classification and on June 6, 1942, an order to report for induction on the following June 19th was mailed to him, which he received and knowingly neglected to obey.

Thereafter he was indicted and convicted under Section 11 of the Selective Training and Service Act, for knowingly failing to perform a duty required by the Act. At the trial, which on the motion of his attorney and upon his own consent in writing, was had before the court without a jury, he offered to prove that he had made a claim of exemption before his Local Board on the ground that he was a conscientious objector. This claim had been rejected both by the Local Board and by the Appeal Board because both boards

---

1 "Nothing contained in this Act shall be construed to require any person to be subject to combatant training and service in the land or naval forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Any such person claiming such exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the land or naval forces under this Act, be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be assigned to work of national importance under civilian direction. Any such person claiming such exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board provided for in section 10(a) (2) [310(a) (2) of this Appendix]. Upon the filing of such appeal with the appeal board, the appeal board shall forthwith refer the matter to the Department of Justice for inquiry and hearing by the Department or the proper agency thereof. After appropriate inquiry by such agency, a hearing shall be held by the Department of Justice with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing. The Department shall, after such hearing, if the objections are found to be sustained, recommend to the appeal board (1) that if the objector is inducted into the land or naval forces under this Act, he shall be assigned to noncombatant service as defined by the President, or (2) that if the objector is found to be conscientiously opposed to participation in such noncombatant service, he shall in lieu of such induction be assigned to work of national importance under civilian direction. If after such hearing the Department finds that his objections are not sustained, it shall recommend to the appeal board that such objections be not sustained. The appeal board shall give consideration to but shall not be bound to follow the recommendation of the Department of Justice together with the record on appeal from the local board in making its decision. Each person whose claim for exemption from combatant training and service because of conscientious objections is sustained shall be listed by the local board on a register of conscientious objectors."

concluded that his opposition was not based upon "religious training and belief." In support of the offer of proof he sought to introduce at the trial the findings of Honorable Lamar Hardy who had been appointed Hearing Officer of claims of conscientious objectors by the Department of Justice. This offer was made on the ground that the Appeal Board in reaching its conclusion had adopted the findings and conclusions of Lamar Hardy. The trial judge rejected the offer of evidence for the reason that the order to report for induction could not be attacked collaterally. In so ruling the court followed the decisions of the Third Circuit in United States v. Grieme, 128 F.2d 811, and of the Fifth Circuit in Fletcher v. United States, 129 F.2d 262. A still more recent decision to the same effect was rendered by the Court of Appeals of the Third Circuit in United States v. Bowles, 131 F.2d 818. By each decision it was held that the failure of a Draft Board to afford a fair hearing was not a defense to a prosecution for failure to report for induction and that the only procedure by which an inductee might procure judicial review of such an order or of an improper classification was by applying for a writ of habeas corpus after he had submitted to induction.

 Section 10(a) (2) provides that: "The decisions of such local boards shall be final except where an appeal is authorized in accordance with such rules and regulations as the President may prescribe." The foregoihg clause shows that Congress intended so far as possible to prevent delay and even the disruption of the administration of the Selective Training and Service Act by court interference with the various steps that the administrative boards are required to take. The wisdom of deferring judicial action until completion of the administrative proceedings can hardly be doubted. Registrants ordered to report for induction are frequently rejected because found under the strict medical examination of the Army "to be physically, mentally, or morally deficient or defective." It is common knowledge that pending this examination by the military authorities actual induction is a contingent matter. There can be no subjection "to combatant training and service" until after the Army officials have conducted their physical examination. The effect of this well-established practice is to render the prior orders of the Local and Appeal Boards but steps leading up to a final acceptance or rejection by the Army. Only when the Army makes its choice are all the administrative steps taken and is the administrative proceeding concluded.

 Even though the Local Draft and Appeal Boards may have committed an error of law in classifying a conscientious objector as a man available for combat service his rights under Section 5(g) are not abridged in any practical sense until he is subjected to military "training and service" after formal induction into the Army. Prior to that time he has suffered only the inconvenience incident to his status as a party to an administrative proceeding—the general sort of inconvenience to which parties customarily submit in proceedings before the Interstate Commerce Commission, National Labor Relations Board, and many other federal and state tribunals including courts of law. The justification for the burden upon the individual of subjecting him to such proceedings instead of stopping them at the outset by injunctive or other relief in the courts lies in the absence of an alternative consistent with the orderly conduct of the government's business, and in this particular case, in the want of any suitable alternative method of selecting the personnel of a large Army. On such grounds the Supreme Court in Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, denied relief to an employer seeking to escape the burden of a National Labor Relations Board proceeding because its business was not in interstate or foreign commerce and because the holding of the hearings would cause damage due to the incidental expense, inconvenience and impairment of its goodwill and of harmonious relations with its employees. The decision of the same court on January 11, 1943, in Endicott Johnson Corp. v. Perkins, 63 S.Ct. 339, 87 L.Ed. ——, is to a like effect. See also Federal Power Comm'n v. Metropolitan Edison Co., 304 U.S. 375, 384, 58 S.Ct. 963, 82 L.Ed. 1408; United States v. Illinois Cent. R. Co., 244 U.S. 82, 37 S.Ct. 584, 61 L.Ed. 1007. Indeed it has become the general rule that where Congress has delegated to an administrative authority a certain field of governmental activity and made its acts final, the courts will not interfere until the administrative proceedings have been concluded and any administrative remedy that may exist has been exhausted. Under this

rule there would seem to have been no good reason for interrupting proceedings leading to induction until some substantial physical restraint occurred. Then the writ of habeas corpus is sufficient to remedy any irregularities of Draft Boards and to satisfy all reasonable scruples on the part of inductees. Moreover, it is the practice of the Army to grant a furlough of seven days after a registrant is formally inducted before he is subjected to military training. This gives him time to apply for a writ of habeas corpus without disturbing the selective service machinery, if he thinks that his rights as a conscientious objector have been infringed.

█ It results from the foregoing that the registrant was bound to obey the order to report for induction even if there had been error of law in his classification. The Administrative Board had jurisdiction of his case and its order could not be wilfully disregarded.

It seems proper, however, to say that we find no error of law on the part of the Appeal Board. The only error suggested is the adoption by the latter of the Report of the Hearing Commissioner whose conclusions are appended in the margin.[2] No question is raised about the facts which he and the Appeal Board found, but only whether the statute was properly interpreted as excluding from the exemption of Section 5(g) a person having such beliefs as the defendant expressed.

█ We hold that Mr. Hardy's interpretation was well founded. In order to avail himself of his privilege a registrant must establish that his objection to participation in war is due to "religious training and belief." It must ex vi termini be a general scruple against "participation in war in any form" and not merely an objection to participation in this particular war. Moreover, the conviction that war is a futile means of righting wrongs or of protecting the state, that it is not worth the sacrifice, that it is waged for base ends, or is otherwise indefensible is not necessarily a ground of opposition based on "religious training and belief." Though the registrant may have been entirely sincere in the ideas he expressed, his objections to reporting for induction were based on philosophical and political considerations applicable to this war rather than on "religious training

---

[2] The Registrant was brought up in the Catholic faith but has gotten away from it and from all religion. The Registrant admitted that he was an atheist or at least an agnostic. It is his belief that organized religion is detrimental and a hindrance to science.

In his questionnaire, the Registrant has circled the word "religious" with a notation on the side "This is not my case." The Registrant makes it quite clear that his religious training and belief is not the basis of his present opposition to war.

There is no doubt that the Registrant is sincerely opposed to war but this belief emanates from personal philosophical conceptions arising out of his nature and temperament, and which is to some extent, political.

The Registrant is an artist, who has travelled abroad and firmly believes in a great deal of individual freedom. He denies the right of our Congress to pass laws which would infringe upon the "individual qualities of a person." During his travels the Registrant has witnessed the animosity which exists among the different peoples of Europe and this has strengthened his opposition to war as a solution to our problems.

It is quite obvious that the Registrant's opposition to the present war is greatly influenced by his dislike of our present administration. He has voiced his objections to its policies and has even stated that the Selective Service Act is a scheme devised by the President to solve the unemployment problem.

The Registrant believes in passive resistance as the only solution to our present situation. He has stated it is not right to have acted unfriendly to Japan and now seek to protect ourselves from the consequences of our own wrongdoing. He also believes that France did the right thing in submitting to Germany. Thus it appears that the Registrant believes in Ghandi's policy of passive resistance.

A report of the F. B. I. indicates that the Registrant is regarded very highly and is a sincere person. He has voiced his opinions about war to various people. However, some of the people interviewed stated that they did not believe the Registrant's objection to war was of a religious nature but rather of a personal nature because of his art work.

I conclude, therefore, from the personal observation and examination of the Registrant that although he may be sincere in his opposition to war, his belief does not emanate from any "religious training and belief" but from his philosophical and political convictions.

I recommend that the appeal of the Registrant based upon grounds of conscientious objections, be not sustained.

and belief." They, therefore, were properly overruled, but not because he lacked membership of any sect or organization whose religious convictions were against war. Such a status was necessary to obtain exemption under the Act of 1917, but the provisions of the present statute are more generous for they take into account the characteristics of a skeptical generation and make the existence of a conscientious scruple against war in any form, rather than allegiance to a definite religious group or creed, the basis of exemption. We are not convinced by anything in the record that the registrant did not report for induction because of a compelling voice of conscience, which we should regard as a religious impulse, but his declarations and reasoning seem to indicate that he was moved by convictions, however sincere, of quite a different character.

█ In the early days of the draft, many thousands of the American people distrusted our foreign policy. If men holding such views had been ipso facto classed as conscientious objectors, the military effort might well have been seriously hampered. In granting such exemption, we think Congress intended to satisfy the consciences of the very limited class we have described and not to give exemption to the great number of persons who might object to a particular war on philosophical or political grounds.

It is unnecessary to attempt a definition of religion; the content of the term is found in the history of the human race and is incapable of compression into a few words. Religious belief arises from a sense of the inadequacy of reason as a means of relating the individual to his fellow-men and to his universe—a sense common to men in the most primitive and in the most highly civilized societies. It accepts the aid of logic but refuses to be limited by it. It is a belief finding expression in a conscience which categorically requires the believer to disregard elementary self-interest and to accept martyrdom in preference to transgressing its tenets. A religious obligation forbade Socrates, even

in order to escape condemnation, to entreat his judges to acquit him, because he believed that it was their sworn duty to decide questions without favor to anyone and only according to law. Such an obligation impelled Martin Luther to nail his theses on the door of the church at Wittenberg and, when he was summoned before Emperor Charles and the Diet at Worms, steadfastly to hold his ground and to utter the often quoted words: "I neither can nor will recant anything, since it is neither right nor safe to act against conscience. Here I stand. I cannot do other. God help me. Amen." Recognition of this obligation moved the Greek poet Menander to write almost twenty-four hundred years ago: "Conscience is a God to all mortals"; impelled Socrates to obey the voice of his "Daimon" and led Wordsworth to characterize "Duty" as the "Stern Daughter of the Voice of God."

█ There is a distinction between a course of reasoning resulting in a conviction that a particular war is inexpedient or disastrous and a conscientious objection to participation in any war under any circumstances. The latter, and not the former, may be the basis of exemption under the Act. The former is usually a political objection, while the latter, we think, may justly be regarded as a response of the individual to an inward mentor, call it conscience or God, that is for many persons at the present time the equivalent of what has always been thought a religious impulse.

█ Even if the Board might have found that the registrant's objections to reporting for induction were based "on religious training and belief," rather than on personal predilection or political and social philosophy respecting the folly and futility of war, yet the record contained substantial indications that the objections were not because of "religious training and belief" in the sense those words are used in the statute, and the weight of the evidence was a matter for the Appeal Board.

█ For the foregoing reasons we find no error in the decision of the trial court and the judgment of conviction is accordingly affirmed.