UNITED STATES of America ex rel.
Peter S. BROOKS, Petitioner,

v.

Clark CLIFFORD, Secretary of Defense,
Stanley R. Resor, Secretary of Army
and Commanding Officer, Fort Jackson,
South Carolina, Respondents.

Civ. A. No. 69–66.

United States District Court
D. South Carolina,
Columbia Division.

Heard Jan. 29, 1969.

Decided Feb. 25, 1969.

Jack F. McGuinn, Columbia, S. C., and Joan Goldberg and Leonard B. Boudin, New York City, for petitioner.

Wistar D. Stuckey and Charles W. Gambrell, Asst. U. S. Attys., Columbia, S. C., for respondents.

HEMPHILL, District Judge.

Before the court is the habeas corpus petition of Peter S. Brooks, a Private in the Army of the United States of America. Brooks insists that he is unlawfully restrained of his liberty, and, illegally detained by Respondents at Fort Jackson, South Carolina, as a Member of the Armed Forces of the United States, despite his conscientious objection to participation in the Armed Services in any capacity. He states that his Fifth Amendment freedoms have been violated absent due process of law in that he never received the recommendation of a Captain Browning (with whom he consulted under routine policies of the Fort) nor did he receive a full statement of the grounds for denial of his application. An additional allegation of the petition complains that the Army failed to follow its own regulations in that it ignored the standards to be applied; further, that the regulations of the Army violate the Establishment Clause of the First Amendment to the Constitution in that the definition of religious belief[1] does not include ethical objections to all war. Specifically, the petitioner objects to the exclusion from conscientious objector status those persons whose objection to war is predicated on "essentially political, sociological or philosophical views or a merely personal moral code." Finally, the petition alleges that Brooks has exhausted his administrative remedies.

The Return of Respondents relies on four separate defenses: (1) a general denial; (2) that a sufficient basis in fact exists for a determination that Petitioner is not entitled to conscientious objector status and discharge from the Army; (3) that he has failed to exhaust available administrative remedies; and (4) that the district court has no jurisdiction whatsoever in the matter since it is strictly a military affair.

A chronology of events reveal that Petitioner was an instructor in Dutchess Community College, Poughkeepsie, New York. After being classified 1-A by his Local Selective Service Board, he volunteered for induction and was inducted into the United States Army on February 12, 1968. He performed his basic train-

1. As a basis for relief to a bona fide conscientious objector.

ing and advanced individual training at Fort Jackson, South Carolina, where he is presently stationed.

Petitioner claims that during advanced infantry training and as a consequence thereof, his views in opposition to participation in war crystallized. The Army has established procedures for the review and processing of persons in such situation[2] DoD 1300.6; Ar 635–20. In accordance with these procedures, Petitioner requested, on August 10th, 1968, an application for discharge, stating therein:

> [T]he infantry training which I have received here at Fort Jackson has made me think even more seriously about my responsibilities to act in accordance with what I see to be the religious teachings of love, compassion and justice. This training, which has been focused on the various ways of destroying human life, has made me realize how strongly I held these views. I now realize I am opposed to all war and cannot participate in any activity which supports something I believe to be contrary to the principles of Goodness.

Petitioner's application was filed September 3, 1968, with the written statements of persons who had known Petitioner for long periods of time, attesting to the sincerity and nature of his beliefs. On that same day, Lieutenant Ronald W. Dunlap, Private Brooks' Commanding Officer, recommended that "Private Brooks should not be given a conscientious objector discharge." The following day, September 4, 1968, Lieutenant Colonel James R. Farrington, Commanding Officer of Private Brooks' Battalion, recommended that the application be disapproved. On September 5, 1968, Lieutenant Byron W. Childress, the Commanding Officer of Private Brooks' Brigade, recommended disapproval. Petitioner was not interviewed

by these officers and was not made aware of their actions.

Petitioner was then interviewed by Captain John C. Browning,[3] an officer, who was required under DoD 1300.6 (VI) (B) (4) to be "knowledgeable in policies and procedures relating to conscientious objector matters." Brooks was also interviewed by the base Chaplain in keeping with Army Regulations and practices. He was also interviewed by Captain Lewis N. Gruber, a psychiatrist. No issue was made as to the qualifications of these examiners or the quality of their examinations.

Major Hutchinson, the Chaplain who interviewed Petitioner, stated:

> I have interviewed Private (E-2) Peter S. Brooks, US 52 772 026, B–12–3, concerning his views on nonparticipation in armed conflict. I have also read carefully the statement he is submitting in which he sets forth his thinking. His standards are certainly derived from Christian religious principles. I do not believe a man should be faulted for having a high degree of idealism and humanitarian concern. Private Brooks seems to have consistently implemented his ideals in practical projects of humanitarian concerns working for the betterment of mankind.

> It is in no sense derogatory of the infantryman to state that Private Brooks could be of benefit to his country in a capacity other than that of an infantryman. If discharged from the service Private Brooks is willing to serve in some Selective Service Work Project. If properly assigned, his skills and teaching abilities could be most beneficial to our nation.

Captain Browning filed his report and recommendations on September 27, 1968.

---

2. See DoD 1300.6 and AR 635–20. (Not included here because of the length, but made a part of this order by reference).

3. Who is Officer in Charge, Personnel Services and Action Branch, and had responsibility to interview and recommend in such matters.

After stating the preliminaries, Captain Browning stated:

> In reviewing Private Brooks' application and in considering the answers to my questions, and general discussion in which he and his counsel participated, it is my opinion that his application is based partially upon personal morals and partially upon religious beliefs. It is impossible for me to determine the degree to which his application is based upon either of the two. Private Brooks has, in my opinion, based his request for discharge upon religious scruples and beliefs to some degree. However, in reviewing his application and based upon information gained through the interview, I do not believe that he is bound by religious beliefs to the point that would warrant discharge from service. Therefore, I recommend that he be classified as a conscientious objector UP paragraph 2–12, AR 600–200, and that he serve the remainder of his term of service as a noncombatant.

Application for conscientious objector status was ultimately denied as it proceeded up the chain of command. Final determination was made by the Department of the Army on December 13, 1968. The basis for the denial was stated as being that Brooks' objection was not based on sincere religious training and belief.

A petition was then filed in this court on January 17, 1969, seeking the "Great Writ." A hearing was held January 29, 1969.

■ The threshold question is whether a Writ of Habeas Corpus is an avenue of relief open to the Petitioner. This court answers affirmatively. Petitioner relies on 28 U.S.C.A. § 2241(c) (3) which states that the Great Writ is not available to one unless "he is in custody in violation of the Constitution or laws or treaties of the United States."

The better reasoned cases [4] clearly hold that Petitioner is "in custody" within the meaning of 28 U.S.C.A. § 2241(c) (3) and that petition for habeas corpus is an appropriate remedy.

The court realizes the admonition found in Judge Friendly's dissent in Hammond v. Lenfest and agrees with the following quote from In Re Kelly, 401 F.2d 211 (5th Cir. 1968):

> The tension between 'proper regard for habeas corpus, "the great writ of liberty"' and 'the duty of civil courts to abstain from intervening in matters constitutionally committed to military justice' inevitably 'raises questions of great delicacy and difficulty.' Burns v. Wilson, 346 U.S. 137, 148, 73 S.Ct. 1045, 1052, 97 L.Ed. 1508 (1953) (Mr. Justice Frankfurter).

Hammond v. Lenfest, 398 F.2d p. 718. But we view the requirement of exhaustion as did the majority in *Hammond*. We consider it to be based on principles of comity and not as an imperative limitation of the scope of federal habeas corpus power. A petitioner's application for discharge as a conscientious objector under the regulations could be facially so convincing, and the factual allegations of withholding or frustration of the right to seek discharge could so clearly present constitutional issues crying out for judicial scrutiny, that the military should, as a minimum, be required to show cause why a writ should not be issued.

This court does not agree with the conclusion of *Kelly*, supra, for one should not have to submit to additional penalties and sanctions before applying for a

---

4. See Hammond v. Lenfest, 398 F.2d 705 (2nd Cir. 1968); In Re Kelly, 401 F.2d 211 (5th Cir. 1968); Brown v. McNamara, 387 F.2d 150 (3rd Cir. 1967) cert. den'd Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105; Gann v. Wilson, 289 F.Supp. 191 (N.D.Calif. 1968); Crane v. Hedrick, 284 F.Supp. 250 (N.D.Calif.1968); Linsalata v. Clifford, 290 F.Supp. 338 (S.D.N.Y.1968); Compare Miley v. Lovett, 193 F.2d 712 (4th Cir. 1952).

writ of habeas corpus. As positioned in *Hammond,* supra, Crane v. Hedrick, supra, and stated in Gann v. Wilson, 289 F.Supp. 191:

> Neither is it necessary for him to petition the Army Board for Correction of Military Records before seeking judicial relief from action taken by the Department of the Army which he claims to be arbitrary, and which by Department of Defense Directive 1300.6 is made final. Ogden v. Zuckert, 111 U.S.App.D.C. 398, 298 F.2d 312 (1961); Girault v. United States, 135 F.Supp. 521, 133 Ct.Cl. 135 (1955). [193]

■ Petitioner would further urge jurisdiction on this court by alleging that the Army failed to follow its own regulations in that certain letters [5] recommending that conscientious objector status be denied were considered by Captain Browning and were sent to him by his superior officers. The thrust of this position is that Captain Browning was influenced by these letters in his final findings and that the regulations of the Army and Department of Defense inferentially require comments of unit commanders or other officers to be submitted after the findings and recommendations of the hearing officers. The court finds no merit in Petitioner's position.[6] Captain Browning stated under oath that he was not influenced by anything but his own judgment and there is nothing in the record to impeach his credibility on this or any other statement he made. Further, the court is not satisfied that the regulations state at what stage further comments or recommendations are proper. Additionally, petitioner argues that Captain Brownings findings are substantially in his favor. He cannot argue in a circle. There is nothing in the record to indicate that if regulations were violated that due process has been denied petitioner. At

one stage in the proceeding it was urged that due process was denied Brooks because he was not notified of the decision of the Department of Defense. This position has apparently been abandoned as it was not treated in the final briefs submitted after the hearing.

Without quoting unnecessarily from the leading case of the United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, it is noted that throughout the military history of our society there has been a basic mores which has been established allowing exemption from military service for those whose moral conscience and duty to a power higher than the state prohibits them from military service. This tradition accompanied by certain erosions flourishes today.

■ The scope of judical review in a situation of this nature was pointed out in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946) and affirmed in *Seeger,* supra. The court is not to weigh the evidence to determine whether a classification is justified for a decision made in conformity with regulations is final even though erroneous. Therefore, the jurisdiction of this court is permissible only when there is no basis in fact for the classification given Petitioner.

■ The supreme test to be applied to this perplexing situation of one seeking classification of conscientious objector is whether or not the seeker has a sincere and meaningful belief which is the *ultimate motivating force to which all else is subordinate* [emphasis added] and the status of which is parallel to that filled by the traditional Deity. *Seeger,* supra. The exception to the broad general rule is also pontificated in the *Seeger* case. Denial of conscientious objections privileges can be predicated on a finding that the objection

---

5. Reference is to letters of Lieutenant Ronald Dunlap, Second Lieutenant Byron Childress and Lieutenant Commander E. G. Dugosh recommending conscientious objector status be denied.

6. This is not to say that the court is not aware of the usually subtle power of "command influence."

to military service has its sole foundation, genesis and basis a personal moral code which is in no way related to religious belief equivocable to a traditional Deity. Conversely, it is repugnantly obvious that a claimed religious belief, although it be a personal one, may meet the test as set forth above. However, objections to military service cannot be based on a "merely personal" moral code.

Attention of the court, in view of these standards, is turned to facts surrounding Peter S. Brooks' application for release from the Army and his petition for the "Great Writ."

Brooks' application was filed on September 3, 1967, after he had completed eight weeks of Basic Combat Training and nine weeks of Advanced Individual Training. His application states that the basis for his request is his religious *principles* [emphasis added]. Answers to questions on Brooks' application are revealing. As to his "religious training" he states that his mother and father were humanists. They are now separated with his father living in Maine and his mother in Cuba. He stated that he belonged to no religious group or sect. The following are pertinent answers to questions posed Petitioner on his application:

(2)a Describe the nature of your belief which is the basis of your claim.

I believe in the responsibility of each man to act and behave according to the principles of Goodness, common to all religions. I believe that each man has the responsibility, because of the gift of life itself, to act with justice, compassion, love, and honesty in his relations with his fellow men. I have tried to act and behave according to these principles throughout my adult life. Further, I find the idea of taking another man's life morally repulsive. Man should not, I believe, take away and destroy

that which he cannot restore; as for example, the gift of life itself. In taking another man's life, man denies the gift of life, thereby denying his responsibility to act according to the principles of Goodness. I do not see how something so morally repugnant as taking another man's life can promote or protect a "good." A man who kills is, I believe, acting contrary to the teachings of love, compassion, and justice. Just as I feel that war is contrary to the principles of Goodness, I also believe that war is essentially an inhuman or subhuman activity. Man was given, along with the gift of life, the *gift of reason*. It is his duty to preserve and create life, not destroy it. Aside from my feeling that war tends to destroy the reasoning processes among men, I also believe that man should, by now, have invented some better way to resolve disputes. I believe that when man uses force to settle a dispute, he denies his gift of reason, he sinks to the level of the beast in the jungle, denies his very "human-ness," his humanity.

b) Explain how, when, and from whom or from what source you received the training and acquired the belief which is the basis of your claim.

I have, as long as I can remember, believed in the principles of Goodness. I was brought up in a home concerned with the problems of human dignity and human rights and my beliefs grew from the example and thinking of my parents.

c) Give the name and present address of the individual upon whom you rely most for religious guidance in matters of conviction relating to your claim.

I believe that, as a man, I have the responsibility or duty to act in accordance with the principles of Goodness and I have not relied on any single individual for guidance in matters of conviction (except my wife, who shares my beliefs and with whom I have always discussed such matters).

d) Under what circumstances, if any, do you believe in the use of force?

I feel that the use of force is contrary to the religious teachings or principles of justice, compassion, love, and honesty. The use of force implies the application of power against an opposing will or desire. I believe that once a man begins to use force against another, that man ceases to reason, ceases his effort at understanding the other. Justice, compassion and love begin with reason and understanding. Thus the use of force tends to work against the principles of Goodness and is essentially evil. Evil means cannot, I believe, promote a good end.

Since the use of force is essentially evil, I feel that it should be resorted to only in emergencies in order to restrain, but not to harm, individuals who may be psychologically or physically unbalanced and who threaten to harm themselves or others. However, in such circumstances, force is used in love, not in anger or hatred, and it is therefore different from the force used in other instances. I believe that force used in such circumstances is a regrettable, and temporary, measure and that it is never to be considered a permanent solution to the problem at hand.

Thus, in general, I feel that the use of force against others is contrary to the principles of Goodness as espoused by all religions. Specifically, I believe that the use of force against collective groups of people, other nations for example, is morally abhorrent. The use of force against another nation through the agency of war visits upon the entire nation, innocent and guilty alike, destruction of life, society, and property. Rather than promoting or protecting love, compassion, and justice, war (and in particular modern war with its indiscriminate destruction of life) destroys these ideals and is, I believe, the greatest evil on earth. Since I feel that war destroys the principles or teachings of my religion, I do not see how it can produce any "good."

His college activities included membership on a Church Board at Colgate University whose primary concern was the study of religious beliefs and principles, participation in Crossroads Africa, work in a home for disturbed and homeless children, civil rights activities and graduate work in sociology so that a better understanding in human needs could be gained in order to promote principles he held.[7]

The court is impressed with the following statement of Petitioner:

(3)a Have you ever been a member of any military organization or establishment before entering the Armed Forces for this tour?

I have never before belonged to a military organization. I entered the United States Army with the knowledge that no one likes war but with the belief that it was my duty as a citizen

---

7. Attached to Brooks' petition are numerous letters from persons who generally were associated with Petitioner at a time when he was engaged in one of the enumerated activities. The thrust of these letters relate to Petitioner's kindness to others.

to serve my country, *a duty which I believed at the time to be in accordance with the principles of Goodness.* [Emphasis added.] I am applying for a Conscientious Objector Discharge at the present time because the infantry training which I have received here at Fort Jackson has made me think even more seriously about my responsibilities to act in accordance with what I see to be the religious teachings of love, compassion, and justice. This training, which has been focused on the various ways of destroying human life, has made me realize how strongly I hold these principles. I now realize that I am opposed to all war and cannot participate in any activity which supports something I believe to be contrary to the principles of Goodness. I could never force such a decision on another person or advise another to take a similar position, but I feel that I must act according to my own beliefs.

The following is a statement signed September 3, 1968:

I did not apply for Conscientious Objector status through my Selective Service local board because at the time I felt it was more important to serve my country as required by law than to follow individual moral and religious precepts. Although the same convictions inform my thinking now as did then, the exposure to military training which I have had here at Fort Jackson has made me realize

more fully just how much I abhor killing and violence. *It is as if the strong feeling which I now have was lying dormant prior to my infantry training but has now risen to the surface of my consciousness.* [Emphasis added.]

██ The court finds that the petition of Peter S. Brooks fits the exception of *Seeger,* supra, for clearly, taking his own statements, there is a basis in fact on which the Department of Army could bottom its decision that the Petitioner's objection to further military service has its sole basis[8] on a merely personal moral code. While there may be some evidence to support Petitioner's sincerity, it is clear, from a review of his background and educational interest that a basis in fact exists for a military determination that his objections to war and military service were based entirely upon a philosophical, sociological or political policy or a purely personal moral code which would not entitle him to the relief and exemption he seeks.[9] Having reached this conclusion, the court feels whatever jurisdiction it might have had it no longer has and finds it unnecessary to determine if any other basis in fact might exist which would support the Army's determination that the basis of Brooks' application was solely on a personal moral code.

Petitioner's final attack is on the language of the Army Regulations[10] themselves contending that such must fall in face of the Establishment Clause of the First Amendment to the Constitution in that in defining religious belief there is excluded one whose objections are "essentially political, sociological or philo-

8. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733; Fleming v. United States, 344 F.2d 912 (10th Cir. 1965).

9. It is also obvious to the court that one can by careful study of legalistic language formulate a religion which would meet the test of Seeger and by a convincing display fit himself within the criteria of Seeger whenever it was opportune for his "religious beliefs" to crystalize and

mature into need requiring immediate release from military custody. The court does not suggest that the present case is bottomed on such a contrivance but can easily foresee that such action could become the trend. This might be timed in order to involve a Petitioner in litigation long enough to prevent certain distasteful military activities.

10. Reference is to AR 635–20 3(b) (3).

sophical views or a personal moral code." Since the language of the regulation is the same as that found in the statute [11] it follows that if one falls, all fall. It is, therefore, considered appropriate to discuss the statute.

■■ This court finds that, in the language of the statute, Congress has projected into this case, and those of a similar nature, a direct and deliberate confrontation with the First Amendment to the Constitution of the United States:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.

It is superfluous merely to assume that Congress was trying to follow this mandate in the Selective Service Act of 1967. It is unmistakeably clear that Congress preserved to and for the military inductee his or her freedom of religion. By this guarantee of freedom the Constitution did not confer on any citizen the right to exemption from military service because of conscientious objection or religious calling. Tyrrell v. United States, 200 F.2d 8 (CA Cal.1953), cert. den'd 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346; Richter v. United States, 181 F.2d 591 (CA Cal.1950), cert. den'd 340 U.S. 892, 71 S.Ct. 199, 95 L.Ed. 647.

■ Fortunately or unfortunately, attempts to rewrite the specific language of Congress by judicial interpretation have led to difficulties neither contemplated by Congress, nor conceived by the military or other authorities responsible for induction, supervision and deployment of the defense forces of the nation. Congress has said:

(j) Nothing contained in this Title [Sections 451, 453, 454, 455, 456, and 458–471 of this appendix] shall be construed to require any person to be subject to combatant training and service in the Armed Forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term "religious training and belief" does not include essentially political, sociological, or philosophical views, or a merely personal moral code. * * *

Congress *has not said* that a personal moral code is sufficient for release from military service nor equal to a religion, no matter how similar or parallel to the ethics found in religious faiths as such.

The courts have found religion difficult to define. United States v. Kauten, 133 F.2d 703, 708 [12] (2 Cir. 1943), Berman v. United States, 156 F.2d 377, 381 (9th Cir. 1946).[13] Skillfully circumventing the language and reasoning in each

---

11. 50 U.S.C.A.App. § 456(j).

12. "It is unnecessary to attempt a definition of religion; the content of the term is found in the history of the human race and is incapable of compression into a few words. Religious belief arises from a sense of the inadequacy of reason as a means of relating the individual to his fellow-men and to his universe—a sense common to men in the most primitive and in the most highly civilized societies. It accepts the aid of logic but refuses to be limited by it. It is a belief finding expression in a conscience which categorically requires the believer to disregard elementary self-interest and to accept martyrdom in preference to transgressing its tenets. A religious obligation forbade Socrates, even in order to escape condemnation, to entreat his judges to acquit him, because he believed that it was their sworn duty to decide questions without favor to anyone and only according to law. Such an obligation impelled Martin Luther to nail his theses on the door of the church at Wittenberg and, when he was summoned before Emperor Charles and the Diet at Worms, steadfastly to hold his ground and to utter the often quoted words: 'I neither can nor will recant anything, since it is neither right nor safe to act against conscience. Here I stand. I cannot do other. God help me. Amen.' Recognition of this obligation moved the Greek poet Menander to write almost twenty-four hundred years ago: 'Conscience is a God to all mortals'; impelled Socrates to obey the voice of his 'Daimon' and led Wordsworth to characterize 'Duty' as the 'Stern Daughter of the Voice of God.' [133 F.2d 708]".

13. Which adopts the definition from Funk & Wagnall's dictionary.

of these cases *Seeger* [14] gives a new legal definition to religious beliefs.

Under the 1940 Act it was necessary only to have a conviction based upon religious training and belief; we believe that is all that is required here. Within that phrase would come all sincere religious beliefs which are based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent. The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition. This construction avoids imputing to Congress an intent to classify different religious beliefs, exempting some and excluding others, and is in accord with the well-established congressional policy of equal treatment for those whose opposition to service is grounded in their religious tenets.

Prior to *Seeger* this court would not have interpreted the language of Congress as *Seeger* has, but *Seeger is the law of the land.*

■ Perhaps the lay definition propounded by lexicographers for the guidance of those not skilled in the law needs stretching, interpretation, or bending to accommodate a legal ambition or support a new legal policy. Congress evidenced no such belief or intention. Perhaps the simple definition of the dictionary was sufficient for the Congress. This court reads:

religion: The outward act or form by which men indicate their recognition of the existence of a god or of gods having power over their destiny; to whom obedience, service, and honor are due; the feeling or expression of human love, fear, or awe of some superhuman and overruling power, whether by profession of belief, by observance of rites and ceremonies, or by the conduct of life; a system of faith and worship, a manifestation of piety. [15]

This definition employs no exploitation of the sacred. If we are to define that religion and ethics and morals have no distinction, then the inductee of the future can well pose worship of himself as the dominating moral force in his life and well say that because he worships himself he objects to war's impact on his person or his personality. Perhaps this carries a logic to absurdity, but, if so, it is better that the possibilities of absurdity be realized at this level of authority. One cannot envision such an interpretation, but such may well be an issue before the court in the future. Religion is an object of worship. Congress so distinguished it. This court so recognizes it but applies *Seeger* interpretation of the meaning of Congress to the case at hand. The regulations of the Department of Defense and the Army do not change or abort the mandate of Congress. Neither the regulations nor the statute affront the "Establishment Clause" of the Constitution.

Petitioner has failed to convince this court of his right to relief from this forum.

The Petition is dismissed.

All restraining orders heretofore issued by this court are dissolved and of no effect.

And it is so ordered.

14. United States v. Seeger, supra, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733.

15. Webster's New International Dictionary of the English Language Published by G. & C. Merriam Company (1933).