**UNITED STATES of America,**
**Plaintiff,**
**v.**
**James Michael FORAN, Defendant.**
**No. 68–CR–106.**

United States District Court
E. D. Wisconsin.
Nov. 10, 1969.

David J. Cannon, U. S. Atty., by Richard E. Reilly, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

Herbert L. Usow, Milwaukee, Wis., for defendant.

## OPINION AND ORDER

REYNOLDS, District Judge.

The defendant, James Michael Foran, is charged with willfully and knowingly refusing induction into the Armed Forces of the United States in violation of § 462, Title 50 App. of the United States Code. The principal question presented in this case is whether the defendant, an avowed atheist, should have been classified by his local draft board as a conscientious objector.

On January 22, 1962, Foran registered for the draft. He filed his first classification questionnaire, Selective Service Form No. 100, on August 15, 1963, and did not fill in Series VIII which deals with conscientious objectors, nor did he request Form No. 150, the special conscientious objector form.

On September 17, 1963, he was classified I–A by Local Board No. 43 and subsequently received the II–S or student classification on October 15, 1963. De-fendant requested Form No. 150, the special conscientious objector form, and the local board mailed the form to him on January 26, 1966. Form No. 150 was returned to his local board on February 4, 1966. After graduating from college, he was reclassified I–A on February 14, 1966. He appealed his classification to the Appeal Board for the Eastern District of Wisconsin. The Board, on March 22, 1966, tentatively decided that Foran should not receive a I–O or lower classification.

Defendant thereupon appealed to the Appeal Board for reconsideration. The Federal Bureau of Investigation conducted a conscientious objector investigation during May of 1966, and defendant appeared before John D. Bird, Jr., special hearing officer for the Department of Justice, on July 12, 1966. The hearing officer recommended that the appeal of defendant, based on the grounds of conscientious objection, be sustained. However, T. Oscar Smith, Chief, Conscientious Objector Section, United States Department of Justice, on September 22, 1967, recommended that defendant's conscientious objector claim be denied and that he not be classified as I–O or I–A–O. On October 27, 1967, defendant and his attorney submitted to the Appeal Board information thought to be relevant to defendant's request for conscientious objector classification. On November 29, 1967, the Appeal Board reconsidered defendant's request and upheld its previous decision to deny him a I–O or lower classification.

On December 28, 1967, defendant requested a written explanation of his I–A classification from the Board. On January 29, 1968, this request was denied. During the same period of time, i.e., on January 10, 1968, the defendant requested a courtesy hearing of the Board, and this request was denied by the Board on January 15, 1968.

On December 29, 1967, the Board directed Foran to present himself for his Armed Forces physical examination on January 19, 1968. On January 18, 1968, he brought suit in United States Dis-

trict Court for the Eastern District of Wisconsin against the members of Milwaukee County Local Board No. 43, Selective Service System, asking that the Board be enjoined from ordering him to report for his Armed Forces physical examination, and arguing that the Board had improperly denied him conscientious objector classification. The court denied him a temporary restraining order, and on February 19, 1968, his complaint was dismissed, because the court did not have subject matter jurisdiction.

Defendant underwent the Armed Forces physical examination on January 19, 1968, and was sent a notice of acceptability on February 9, 1968. On February 16, 1968, the Board sent defendant an order to report for induction on March 8, 1968. Also on February 16, 1968, the Board sent defendant notice of postponement of induction until further notice so that the Board could consider his request for a I–S (C) classification. The Board determined that defendant did not qualify for such a classification, so notified him on February 27, 1968, and further informed him that he should report for induction, as originally ordered, on March 8, 1968.

Defendant then brought another suit in federal court against the members of the draft board, and on March 7, 1968, a temporary restraining order stopping the induction of the defendant was issued. On April 8, 1968, a three-judge federal court vacated and dissolved the restraining order. On February 24, 1969, the Supreme Court of the United States granted the Government's motion to dismiss Foran's appeal from the ruling of the three-judge court. Defendant was notified on May 22, 1968, that he was to report for induction on June 12, 1968. Defendant reported to the induction center at the appointed time but refused to submit to induction.

The statute involved in the case is § 6(j) of the Selective Service Act of 1967, 50 U.S.C. App. § 456(j), which provides in pertinent part:

"Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code. * * * *"

The Government does not contend that defendant is not conscientiously opposed to participation in war in any form, nor does it present any evidence to indicate that such beliefs are not sincerely held. The issue for decision, then, is whether defendant's opposition to war is based on "religious training and belief" within the meaning of § 6(j), as that phrase has been interpreted by the Supreme Court.

■■ The scope of review which the court must apply in a case of this type is extremely narrow. The Fourth Circuit in United States v. Jackson, 369 F.2d 936 (4th Cir. 1966) said at page 938:

"In a criminal prosecution for a refusal to obey a Selective Service Board order 'the scope of judicial inquiry into the administrative proceedings leading to the defendant's classification is very limited.' Blalock v. United States, 247 F.2d 615, 619 (4 Cir.1957). The courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant. Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Blalock v. United States, supra."

Because the court must determine as a matter of law whether defendant's beliefs, upon which his conscientious objection is founded, are to be characterized as "religious" within the meaning of § 6(j), opinions as to the characterization to be given to those beliefs do not, of themselves, provide a basis in fact for allowing or disallowing defendant's claim to conscientious objector classification. Morin v. Grade, 301 F.Supp. 614, 619 (W.D.Wis.1969). Therefore, the opinion of Smith that defendant did not meet the requirement for exemption as a conscientious objector because he was an avowed atheist does not, in itself, provide a basis in fact for denial of the classification.

■The Supreme Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), construed the predecessor of § 6(j). That provision was the same as § 6(j) except that "religious training and belief" was defined as "an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but [not including] essentially political, sociological, or philosophical views or a merely personal moral code." The Supreme Court interpreted "religious training and belief" as follows:

"* * * Within that phrase would come all sincere religious beliefs which are based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent. The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition. This construction avoids imputing to Congress an intent to classify different religious beliefs, exempting some and excluding others, and is in accord with well-established congressional policy of equal treatment for those which opposition to service is grounded in their religious tenets." 380 U.S. at 176, 85 S.Ct. at 859.

When Congress enacted the Selective Service Act of 1967, it deleted from the definition of "religious training and belief" in § 6(j) the phrase "an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation." Despite this change, this Court concludes that the standard announced in United States v. Seeger applies to this case, since to construe the statutory language more narrowly would bring into question the constitutionality of the statute under the First and Fifth Amendments. See Morin v. Grade.

The statute expressly indicates that "religious training and belief" does not include views that are essentially political, sociological, or philosophical, or that reflect a merely personal moral code.

■■ To qualify as a conscientious objector, an individual must have a sincere belief that is the basic elemental motivating force in his life, to which all else is finally subordinate, and which has the same place in the life of the objector as does an orthodox religious belief in the life of a normally religious individual. See United States ex rel. Brooks v. Clifford, 296 F.Supp. 716 (D. So.Car.1969). Belief in a traditional personalized God is not necessary. The Supreme Court held that Seeger was entitled to conscientious objector classification despite the fact that he did not believe in God, Seeger, supra, and the court in United States v. Shacter, 293 F.Supp. 1057 (D.Md.1968), found that the registrant qualified for conscientious objector classification despite the fact that he had told the draft board that he was an atheist.

■ The facts of the present case reveal that the defendant was raised in a Catholic family and instructed in that faith as a child. Defendant attended Catholic grade schools, a Catholic high school, and was graduated from Mar-

quette University, a Catholic Jesuit school. During his second year in college, defendant determined that he no longer believed in God. However, the record discloses that he maintained a number of basically religious concepts that he had learned in his early religious training. A central element of his views was his strong moral aversion to violence of any type, a precept to which he had adhered since his high school days.

The record indicates that the defendant had an aversion to violence for a long period of time. Defendant stated in effect that objective principles of morality can be deduced from the order of the universe. One of these axioms is the principle that one should not kill. He asserted that he did not believe in God, but did not claim absolute certainty for his belief. Moreover, defendant indicated that his position resulted in large part from his early religious training. He was raised with the Ten Commandments as a moral code and believes that they are definitely valid and moral laws.

The Court is convinced that the defendant is sincere in his opposition to all violence and any participation in war. The recommendation that the special hearing officer, John D. Bird, Jr., made after an extensive interview with the defendant includes several references to his sincerity. Defendant's testimony at trial reflected an honest and unprepared mind, not rehearsed or memorized language of court decisions. The record as a whole nowhere indicates that the beliefs of the defendant were not "truly held and keenly felt," *Shacter*, at 1062, nor does the Government direct the court's attention to any evidence to the contrary.

A careful consideration of the record leads the Court to the conclusion that the beliefs of the defendant occupy the same place in his life as an orthodox belief in God plays in the life of one clearly qualified for conscientious objector classification. For instance, the defendant testified:

"* * * I hold these principles to be higher than any others and that in comparison, say, to those of a[n] orthodox religious person, I would say that they play quite a similar role insofar as they motivate and direct my actions with respect to all human beings.

"On the other hand, I am not really involved in any ritual or rites that a religious individual might be, but I would say they play the same roles * * * as the morality, the creed of an orthodox religious person."

The Court further finds that the beliefs of the defendant are based in part, at least, on the early religious training he received in Catholicism. The connection between his present views and normal religious doctrine, like the Ten Commandments, indicate that his beliefs were not essentially the product of the application of reason, or of political, sociological, or philosophical views. Rather, defendant's "* * * table of ultimate values is moral and ethical. It reflects quite as real, pervasive, durable, and commendable a marshalling of priorities as a formal religion. It is just as much a residue of culture, early training, and beliefs shared by companions and family. What another derives from the discipline of a church, [defendant] derives from the discipline of conscience. * * * He was as genuinely and profoundly governed by his conscience as would have been a martyr obedient to an orthodox religion." United States v. Sisson, 297 F.Supp. 902, 905 (D.Mass. 1969).

The Government contends that the record discloses that defendant's views are the product of political, sociological, or philosophical views. The Court finds the record devoid of any evidence indicating a political or sociological basis to defendant's belief. The fact that he has read Bertrand Russell and Spinoza, among others, and has been influenced

by these philosophers does not mean that his beliefs are essentially the product of philosophical views, nor does the Government offer any evidence to that effect.

Of primary importance to the disposition of this case is the fact that the defendant is an avowed atheist. The Justice Department found that the defendant did not qualify for conscientious objector classification because he was an atheist, and it is the opinion of this Court that defendant's atheism was central to the decisions of both the local board and the Appeal Board. The fact that a registrant is an atheist does not mean that he cannot qualify for conscientious objector classification. In both the *Shacter* and *Sisson* cases, registrant atheists were held to be entitled to conscientious objector classification. Foran's belief was in part a product of faith and most certainly occupied the same place in his life as normal religion occupies in the life of a religious person.

Therefore, this Court concludes, as a matter of law, that the beliefs of the defendant meet the *Seeger* test and that his aversion to war is based on religious training and belief as interpreted by the Supreme Court. Consequently, the refusal of the local board and Appeal Board to classify defendant as a conscientious objector had no basis in fact.

The foregoing opinion shall constitute the findings of fact and conclusions of law in this case in accordance with rule 23(c) of the Federal Rules of Criminal Procedure.

It is therefore ordered that the defendant, James Michael Foran, shall be and he hereby is acquitted of violation of § 462, Title 50 App. of the United States Code as charged in the indictment. The clerk of court is directed to enter judgment of "not guilty" in accordance with these findings.